Agnes E. NILSEN, Plaintiff-Appellant,

v.

The CITY OF MOSS POINT, MISSISSIPPI, Defendant-Appellee.

No. 81–4055.

United States Court of Appeals, Fifth Circuit.

April 1, 1983.

---

Thomas R. Sabin, Kirkland, Wash., for plaintiff-appellant.

Dalton McBee, Jr., M. Curtiss McKee, Jackson, Miss., for defendant-appellee.

Before CLARK, Chief Judge, BROWN, WISDOM, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

*Facts and Procedural History*

Agnes Nilsen has filed four successive suits on the same claim against the City of Moss Point[1] or its officers and agents.

Each complains that the city refused to hire her as a fire fighter directly and solely because of her sex. The first was dismissed without prejudice, for reasons immaterial here. The second and third were consolidated and decided against her by summary judgment for her failure to meet the timely filing requirements of Title VII, pursuant to which the first three suits were brought.

While motion for that judgment was pending, she sought to amend her complaint. Her motion for leave to do so reads, in pertinent part:

19. Plaintiff realleges paragraphs 1 through 18 above and incorporates the same by reference as if set forth in full herein.

20. Plaintiff's cause of action under this count is in equity arising under the provisions of the United States Constitution and amendments thereto, which include, but are not limited to the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. 1983; and the Civil Rights Act of 1861, 42 U.S.C. 1985(3). Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1337 and 1334.

. . . .

22. The employment practices of the defendants as stated herein above and herein after with respect to plaintiff deny plaintiff her right to equal protection and due process of law under the United States Constitution and amendments thereto, which include, but are not limited to the Fourteenth Amendment to the United States Constitution.

. . . .

As grounds for the above motion, plaintiff would show the following unto the Court:

1. *The above and foregoing amendments are based upon the same facts and circumstances as are alleged in the original complaint filed herein.*

2. *The above and foregoing amendments merely add additional grounds and bases on which plaintiff brings her suit against defendants.*

---

1. *Nilsen I* was against the Fire Chief and the Chairman of the Civil Service Commission only. The present suit, *Nilsen IV,* is against the city alone.

. . . . (emphasis added).

Leave to amend was denied; and on appeal we affirmed both the summary judgment and the denial of leave to amend, noting as to the latter "plaintiff's unexplained dilatoriness." *Nilsen v. City of Moss Point,* 621 F.2d 117, 122 (5th Cir.1980) (*Nilsen II/III*). Nothing daunted, Ms. Nilsen filed the present suit, *Nilsen IV,* advancing again the additional theories set out above—theories that for brevity we shall henceforth refer to as the § 1983 claim or theory—that she had sought to add to *Nilsen II/III* by the rejected amendment. Again she suffered summary judgment, this time by reason of the bar of the judgment in *Nilsen II/III* and laches. A panel of our court reversed in a comprehensive and well-written opinion with which we find ourselves in general agreement on most points, detailing the facts of the case more fully than we find it necessary to do for present purposes. 674 F.2d 379 (1982). We granted rehearing en banc and now affirm the judgment of the trial court.[2]

### Bar

It is patent that, in the words of Ms. Nilsen's motion quoted above, her claims here are based "upon the same facts and circumstances as are alleged [in *Nilsen II/III*]": in a word, upon the same transaction. Moreover, the same right, to be free of intentional sex discrimination in employment, is claimed to have been infringed by

2. We recognize that the Supreme Court has granted review of a case presenting similar issues, *Migra v. Warren City School District Board of Education,* —— U.S. ——, 103 S.Ct. 722, 74 L.Ed.2d 948 (1983). The deference due that Court by us would, in normal course, persuade us to await its ruling for such light as it might shed here. Because of docket congestion, however, that case cannot even be argued until the October 1983 term. 51 U.S.L.W. 1104 (Jan. 11, 1983). We think this too long to require these parties to wait for a decision in this court, especially where the events giving rise to this litigation occurred almost nine years ago. Somewhere it must end.

3. 42 U.S.C. § 1983 provides no substantive rights, only a remedy. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508

the same wrong, that discrimination. The primary right and duty asserted and the primary wrong complained of are the same in each action. Only the legal bases advanced for relief are different.[3]

The test to be applied is settled in our circuit:

For a prior judgment to bar an action on the basis of *res judicata,* the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases. *Stevenson v. International Paper Co.,* 516 F.2d 103, 108 (5th Cir.1975). The last prong of this test is at issue in this case. Various tests have been advanced to determine whether the substance of two actions is the same for *res judicata* purposes: Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments? *Acree v. Air Line Pilots Association,* 390 F.2d 199, 201 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968). This Court has recognized that the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action. *Stevenson v. International Paper Co.,* 516 F.2d 103, 109 (5th Cir.1975)

(1979). Ms. Nilsen's right does not emanate from § 1983, but rather from the Equal Protection clause of the 14th Amendment. And as we observed in *Rivera v. City of Wichita Falls,* 665 F.2d 531, 534 n. 4 (5th Cir.1982): "This court has held that when § 1983 is used as a parallel remedy with Title VII in a discrimination suit, the elements of the substantive cause of action are the same under both statutes. *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir.1980)." *See also Pouncy v. Prudential Ins. Co.,* 668 F.2d 795, 797 n. 3 (5th Cir.1982) (elements of substantive cause of action for racial employment discrimination identical under Title VII and § 1983), and *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (New York anti-discrimination statute, same cause of action as Title VII).

*Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052 (5th Cir.1979).

■■■ By these tests, it is patent that the "cause of action" sought to be asserted today by Ms. Nilsen is the same as that advanced in *Nilsen II/III.*[4] That the issue presented here was never decided in the former case does not signify; according to general theories of judicial estoppel, to which "federal courts have traditionally adhered," it is black-letter law that *res judicata,* by contrast to narrower doctrines of issue preclusion, bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (Issue preclusion by state judgment in § 1983 action, dicta that claim preclusion doctrine equally applicable), not merely those that were adjudicated.[5] And it is equally settled that one who has a choice of more than one remedy for a given wrong, as Ms. Nilsen did here, may not assert them serially, in successive actions, but must advance all at once on pain of bar.[6]

4. The same result obtains under the transactional test of a "claim" enunciated by the Restatement; a test that represents the modern view and that we prefer to our earlier writings in *Kemp,* quoted above:

Comment:

a. *Rationale of a transactional view of claim.* In defining claim to embrace all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction (or series of connected transactions), this Section responds to modern procedural ideas which have found expression in the Federal Rules of Civil Procedure and other procedural systems.

"Claim," in the context of *res judicata,* has never been broader than the transaction to which it related. But in the days when civil procedure still bore the imprint of the forms of action and the division between law and equity, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant. Thus, defeated in an action based on one theory, the plaintiff might be able to maintain another action based on a different theory, even though both actions were grounded upon the defendant's identical act or connected acts forming a single life-situation. In those earlier days there was also some adherence to a view that associated claim with the assertion of a single primary right as accorded by the substantive law, so that if it appeared that the defendant had invaded a number of primary rights conceived to be held by the plaintiff, the plaintiff had the same number of claims, even though they all sprang from a unitary concurrence. There was difficulty in knowing which rights were primary and what was their extent, but a primary right and the corresponding claim might turn out to be narrow. Thus it was held by some courts that a judgment for or against the plaintiff in an action for personal injuries did not preclude an action by him for property damage occasioned by the same negligent conduct on the part of the defendant—this deriving from the idea that the right to be free of bodily injury was distinct from the property right.

Still another view of claim looked to sameness of evidence; a second action was precluded where the evidence to support it was the same as that needed to support the first. Sometimes this was made the sole test of identity of claim; sometimes it figured as a positive but not as a negative test; that is, in certain situations a second action might be precluded although the evidence material to it varied from that in the first action. Even so, claim was not coterminous with the transaction itself.

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (Second) of Judgments, § 24 Comment A. (1982).

5. § 24. Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Restatement (Second) of Judgments (1982).

6. C. Transaction may be single despite different harms, substantive theories, measures or kinds of relief.

.    .    .    .    .

■ Appellant cites *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) and *Alexander v. Gardner-Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) for the proposition that her Title VII and § 1983 claims are "separate, independent and distinct 'causes of action' for purposes of *res judicata.*" This, we believe, misreads the significance of those cases. Each focused upon the availability of remedies and concluded that it was Congress' intent to construct separate procedural avenues for the vindication of an individual's substantive rights. In addition, each concluded that because of the courts' ability to fashion equitable remedies, in the first instance, a plaintiff could elect to bring suit under as many applicable civil rights statutes as the facts of his case permit irrespective of the actual or potential overlap of statutory remedies. Thus the general principle which emerges is that the utilization of one procedural vehicle to vindicate a substantive right does not preclude employing a parallel procedural vehicle to vindicate the same substantive right. *See* note 3, *supra.* Certainly, the elements of a disparate *treatment* action such as Ms. Nilsen's under Title VII, where intentional discrimination is the claim, are identical to those of § 1983.

■ Neither *Johnson* nor *Alexander* addresses the question before us today: whether all theories of remedy or recovery must, on pain of bar, be joined in a civil rights action arising out of a given transaction. We do not think that, in using such a phrase as "the § 1981 cause of action" while writing on a different question than ours, the Court intended to foreclose the result that we reach today. Especially is this so when we consider, for example, such passages as the following from *Johnson:*

> Petitioner freely concedes that he could have filed *his § 1981 action* at any time after *his cause of action* accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on *his § 1981 rights.* The fact that his slumber may have been induced by faith in the adequacy of his *Title VII remedy* is of little relevance inasmuch as *the two remedies* are truly independent. Moreover, since petitioner's *Title VII court action* now also appears to be time barred because of the peculiar procedural history of this case, petitioner in effect, would have us extend *the § 1981 cause of action* well beyond the life of even *his Title VII cause of action.*

421 U.S. 454, at 466, 95 S.Ct. 1716, at 1723, 44 L.Ed.2d 295 (emphasis added).

Here, within a few lines, we find "his § 1981 action" apparently used by contrast to "his cause of action," as well as references to Title VII and § 1981, each, both as "remedies" and as "causes of action." To attribute a talismanic quality to these expressions, or to any of them, when the Court was writing without attention to the issue that we face today would be to take form for substance with a vengeance.

As we noted above, the substantive right to be vindicated, if any, is Nilsen's right to be free of such discriminatory practice as would violate the Equal Protection clause of the Fourteenth Amendment. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–618, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). Therefore, any inquiry as to the application of the doctrine of *res judicata* must go beyond the procedural vehicle utilized to a pragmatic assessment of "whether or not the primary right and duty and delict or wrong are the same in each action." *Stevenson v. International Paper Co., Mobile Alabama,* 516 F.2d 103, 109 (quoting *Seaboard Coast Line R.R. Co. v. Gulf Oil Corp.,* 409 F.2d 879, 881 (5th Cir.

That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief. . . .

Restatement (Second) of Judgments, § 24 comment C. (1982).

1969)). *See also* Restatement (Second) of Judgments, § 24 (1982).

Two other questions must be answered, however, before the application of the doctrine below can be approved. Was the former adjudication one on the merits, and could the present theory of action have been presented there?

### *"On the Merits"?*

■ Dismissals for want of jurisdiction are not decisions on the merits, while those based on limitations are. *Nilsen v. City of Moss Point,* 674 F.2d 379, 382 and cases cited (5th Cir.1982); *Mathis v. Laird,* 457 F.2d 926 (5th Cir.1972). Which of these was the decision in *Nilsen II/III* that Ms. Nilsen had not met the timeliness requirements of Title VII? Our panel all but decided the question in accord with our decision today, veering away only at the last minute because it concluded that a resolution of it was not necessary to its decision. 674 F.2d, at 382–4. It is necessary to ours, however, and where they stopped we must go on. We, like they, think the answer is to be found in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

■ Based on *Zipes,* we hold that the timely filing requirements of Title VII are to be treated as limitations periods for all purposes. *Zipes* clearly holds that these requirements are not jurisdictional, so that in any event it is beyond our power to declare them to be so.[7] This leaves us only the choice between viewing them as either limitations periods or as provisions *sui generis*—subject to waiver and to equitable tolling, but nevertheless not merits adjudications for purposes of the preclusion doctrines. We see no reason to reach the second—as it seems to us—bizarre result, especially in view of *Zipes'* entire failure to envision it and its repeated analogizing of these provisions to "limitations periods."

Perhaps the quotation marks there applied by the Court are meant as anchors to windward; if so, it is for the Court to navigate any narrow channel that may remain open, not for those who should attempt to follow the Court's broad course.

■ More, dismissals for want of jurisdiction are paradigms of non-merits adjudication: they do not at all regard the merits of an action; instead, they merely classify that action, whatever its merits, as one on which the court concerned cannot speak. *See, e.g., Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1,* 665 F.2d 594 (5th Cir.1982); *B., Inc. v. Miller Brewing Company,* 663 F.2d 545 (5th Cir.1982). A timebar determination, by contrast, assumes or decides that the court could have spoken but refuses to do so beyond declaring the claim to be stale. As the panel correctly noted, such a determination bars not only the stale claim asserted but any others, though themselves still timely, that are part of the same cause of action, 674 F.2d at 382 (citing *Mervin v. F.T.C.,* 591 F.2d 821 (D.C.Cir.1978) and *Cemer v. Marathon Oil Co.,* 583 F.2d 830 (6th Cir.1978)).

It remains to consider the suggestion that, since Ms. Nilsen sought tardily to add new bases for her claims and was rebuffed for her slowness, she "could not" have brought them as a part of *Nilson II/III.* It is only at this point that, by contrast to our general agreement thus far with the panel opinion, we must take a view differing from it.

### *"Could Have Been Brought"?*

■ The panel concluded that since the rule against splitting causes of action—as it tacitly acknowledged Ms. Nilsen had done—is grounded in a policy of encouraging litigants to raise all claims arising out of one transaction in a single suit, that rule "has

---

**7.** "We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, ..." *Zipes,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234, 243 (1982). *See also Allen v. United States Steel Corp.,* 665 F.2d 689, 695 n.

2 (5th Cir.1982); *Yates v. Mobile County Personnel Board,* 658 F.2d 298 (5th Cir.1981). The question whether an entire failure to file claim with the EEOC might deprive the court of Title VII jurisdiction is not presented here, and we, of course, express no opinion regarding it.

no function if *the procedural system* does not permit the litigant to raise all of those claims in one proceeding." *Nilsen II/III,* 674 F.2d at 384 (emphasis added). This is sound law, and we do not gainsay it as a general proposition. Its soundness is borne out by the illustration given by the panel, that of the refusal of a federal court, in the exercise of its discretion, to exercise jurisdiction over pendent state law claims. Doubtless such claims—claims which the litigant was unable, through no fault of his own, to try out in the federal proceeding—should be held not precluded. *Id.* This is so because, under the procedural system of the forum, the magistrate either could not or need not have entertained them. Restatement (Second) of Judgments, § 25 Comment E. Put another way, the rule—protective both of the court and of the defendant—precluding litigants from splitting causes has no function where the court itself, rather than the litigant, does the splitting and does it by reason of no default on the part of the litigant, who timely advanced all his claims in the initial proceeding.

Such is not the case here. Here it was not the procedural system of the forum that precluded the joinder of all Ms. Nilsen's asserted remedies in one proceeding. Instead, as we have bindingly held, it was her own "unexplained dilatoriness." The system itself was, in and of its nature, ready and able to accommodate all such claims, if timely made, and obliged to entertain them: had the § 1983 theory been so advanced, the court would have had no choice but to adjudicate it. Instead, it was Ms. Nilsen who split her claim or "cause of action," reserving one basis or legal theory supportive of it until it was untimely and need not be adjudicated. That this § 1983 theory was untimely advanced and thus properly rejected is an issue that has already, and rightly or wrongly, been finally settled in the former appeal and is not open to reexamination today.

In these circumstances, both courts and commentators agree that theories which were the subject of an untimely motion to amend, filed in the earlier action, "could have been brought" there. As our brethren of the Eighth Circuit recently held, citing the Restatement, in just such a case as this, where the theories advanced had been the subject of an unsuccessful amendment to an earlier Title VII action:

> There is no merit to Ms. Poe's argument that the theories she raises in Poe II were unavailable to her in Poe I because the District Court in Poe I denied leave to amend her complaint. Ms. Poe filed suit August 7, 1978. She did not move to amend her complaint until April 27, 1981, the first day of trial. It was well within the District Court's discretion to deny leave under Fed.R.Civ.P. 15(a) because the motion was filed too late. We agree with the Restatement (Second) of Judgments § 25 comment b (1982), that "[i]t is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late."

*Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir.1982). Their opinion on the issue is well reasoned and is consonant both with the current Restatement and with the general modern view of preclusion doctrines. Even if it were not, we might hesitate to fly in the face of square precedent from a sister circuit. Instead, since their view commends itself to us on grounds both of reason and authority, we adopt it.

The doctrine of *res judicata* contemplates, at a minimum, that courts be not required to adjudicate, nor defendants to address, successive actions arising out of the same transaction, asserting breach of the same duty. To reward Ms. Nilsen for her own delinquency by permitting her to maintain this action would be clearly at variance with this principle. We decline to do so.

Instead, we agree with the Sixth Circuit, writing in *Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434 (1981), that a judgment on the merits in such a Title VII action as this bars a successive action raising a § 1983 claim:

It is undisputed that appellant's earlier Title VII action and the present § 1983 suit are based on the same discriminatory acts. When two successive suits seek recovery for the same injury, "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Cemer v. Marathon Oil Company,* 583 F.2d 830, 832 (6th Cir. 1978). *See also Mayer v. Distel Tool & Machine Company,* 556 F.2d 798 (6th Cir. 1977); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209 (6th Cir.1970). This principle applies even if an intervening decision effects a change in the law which bears directly on the legal theory advanced in the second suit.

649 F.2d, at 437–8.

The panel attempted to distinguish *Harrington* on the basis of that court's observation, contained in language immediately following the passage quoted above, that there the plaintiff "elected not to advance a § 1983 theory" in the earlier Title VII action, whereas Ms. Nilsen, when she got around to doing so, was not permitted to amend it in. Despite our deference to the distinguished panel, we are unable to concur in this reasoning.

Ms. Harrington elected not to advance her § 1983 claim until after judgment, too late for it to be considered in the original action. Ms. Nilsen likewise elected not to advance hers until, as is finally settled, it was presented too tardily to be considered in *Nilsen II/III.* We see no distinction redounding to Ms. Nilsen's benefit between the two "elections"; each resulted in a withholding of the § 1983 theory until it would have been improper to consider it in the earlier action. Both claims were properly held barred, since in each case the procedural system offered a full and fair opportunity for litigation of the § 1983 theory had it been timely presented. We have already bindingly held that it would have been improper and prejudicial to the city to permit Ms. Nilsen to add that theory tardily to *Nilsen II/III.* That victory would be

rendered a hollow one indeed were we now to determine that the proper consequence of her tardiness is the creation by us of a new exception to settled doctrines of claim preclusion to accommodate that tardiness, one authorizing an even tardier lawsuit. We decline to do so.[8]

The judgment of the trial court is

AFFIRMED.

WISDOM, Circuit Judge, with whom ALVIN B. RUBIN, POLITZ, TATE, JOHNSON and JERRE S. WILLIAMS, Circuit Judges, join, dissenting:

I respectfully dissent for the reasons discussed at length in the panel opinion. With deference to the majority of the Court in banc, I add a few remarks. I do so because I feel that at the expense of justice the Court in banc is torturing the doctrine of res judicata.

No one can quarrel with the majority's statement that "res judicata ... bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication". (Emphasis in the original.) That principle has no application to a plaintiff who attempted to advance her constitutional § 1983 claim by amendment to her Title VII action, but was not allowed to do so by the district court on the motion of the defendant. The district court dismissed *Nilsen I* "without prejudice". That court later denied the plaintiff's motion to amend *Nilsen II/III* apparently, or at least probably, because the defendant made the following argument:

The [42 U.S.C. § 1983] claims alleged by Plaintiff in her motion to amend are apparently not barred by the applicable Statute of Limitations. Therefore, there *would be no prejudice to the Plaintiff in denying the motion to amend which would only mean that she would have to refile her allegations in an original complaint.* (Emphasis added.)

Defendant's Memorandum in Opposition to Plaintiff's Motion to Amend.

**8.** Because of our disposition of the *res judicata* issue, we need not consider the laches ground.

Nilsen did exactly what the defendant urged her to do and what the district judge must have thought that she had a right to do when he refused to allow her to amend the Title VII suit. She "refile[d] her allegations in an original complaint". To hold that she forfeited her constitutional right of action (not barred by the statute of limitations) because the district court did not wish to try that claim with the Title VII claim (which was time barred) subordinates constitutional rights to a rigid, formalistic, medieval-like concept of res judicata.

I do not question our decision in *Nilsen II/III* upholding the trial judge's exercise of discretion in denying amendment of the complaint. But that decision should have no effect on the plaintiff's absolute right to file a new complaint, timely brought, grounded on the fourteenth amendment. The plaintiff did what the rule against splitting causes of action encourages her to do: she attempted to consolidate all her claims in one action. It is an extension of the rule against claim-splitting and contrary to the rationale of the rule to apply it to a plaintiff who was not permitted to consolidate her constitutional claim with the Title VII claim in the earlier proceeding.

The general and well understood policies underlying the doctrine of res judicata are universally accepted as sound. But there is no basis for application of the doctrine unless the plaintiff has "a full and fair opportunity to litigate" his claim. If, as appears to me, the district court and this court were considering whether proceedings in *Nilsen II/III* were the proper proceedings in which to raise the § 1983 claim, the courts' determination of that limited issue did not affect Nilsen's right to a full and fair opportunity to litigate her § 1983 claim. Only a liberal view of a plaintiff's ability to amend renders it appropriate to give broad preclusive effect to the inadequacies of a plaintiff's original complaint. The position of the court in banc is manifestly unfair, but the panel decision did not attempt to fashion an exception to res judicata based on unfairness. It refused to extend the doctrine to a situation where it was inapplicable.

The discretion given a court to deny an amendment is a valuable working tool. It is no more. Here reliance on that denial to bar adjudication of a constitutional claim conflicts with the first rule of the Federal Rules of Civil Procedure: "[The rules] shall be construed to secure the just, speedy, and inexpensive determination of every action". The decision of the Court in banc also conflicts with common sense. Putting to one side the quibbles associated with what constitutes a decision on the merits, it is evident that Nilsen never had a day in court on the substance of her constitutional claim and that this claim failed to receive a just determination by this Court. I cannot stand aside and bow to injustice in the name of formalism.