Doyle HARTMAN, Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.

No. 3:97–CV–0438–P.

United States District Court, N.D. Texas, Dallas Division.

Sept. 8, 1998.

George P. Young, Michael T. Cooke, Fort Worth, TX, for plaintiff.

R. Brent Cooper, Wm Frederick Allred, Dallas, TX, for defendant.

## MEMORANDUM OPINION
## AND ORDER

SOLIS, District Judge.

This matter is before the court on the parties' cross motions for summary judgment on the Defendant's duty to defend Plaintiff. Plaintiff argues that he is entitled to judgment based on collateral estoppel or law of the case by virtue of the Fifth's Circuit's rulings in a previous case between the parties. Defendant argues that the instant suit is barred by res judicata by virtue of the same. For reasons stated below, Plaintiff's motion is **DENIED**; and Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

#### The Wilcox Suit and St. Paul I

In 1990, Doyle Hartman sued an ex-employee for breach of the severance agreement between them ("Wilcox Suit"). Wilcox counterclaimed for defamation, invasion of privacy, misrepresentation, fraud and intentional infliction of emotional distress.[1] On March 24, 1992, Hartman notified St. Paul of the Wilcox suit and requested a defense under certain general and excess liability policies issued to him by St. Paul. Prior to trial of the Wilcox Suit, Hartman brought an action in this court to enforce his contract with St. Paul ("St. Paul I Suit").[2] The Wilcox Suit was tried before a jury in January of 1994 and resulted in a partial verdict. Thereafter, the judge ordered the entire case be retried and set the matter for November 14, 1994. In the meantime, the St. Paul I suit

progressed. Prior to trial, the court ruled as a matter of law that St. Paul owed Hartman a duty to provide coverage under two policies for four of Wilcox's counterclaims, subject to a jury finding that Hartman provided prompt written notice of those claims.

In the First Amended Pretrial Order entered in the St. Paul I suit, Hartman stated: "**Damages claimed ... are $2.3 million** in reasonable and necessary attorneys fees and litigation costs **from March 1992 through February 1994** defending the *Wilcox* claims, **and $10–15 million** from business disruption to Hartman's oil and gas business from being forced by St. Paul's actions to deal with the *Wilcox* claims himself." (emphasis added) In the same document, under his "Contested Issues of Fact," Hartman included: "The amount of reasonable and necessary attorneys' fees and expenses incurred in defending the *Wilcox* suit **from March 1992 to March 1993** unpaid by St. Paul" and "[t]he amount of reasonable and necessary attorney's fees and expenses for defending the *Wilcox* suit from **April 1993 through trial of this matter to March, 1994** unpaid by St. Paul. [Note: As a matter of law Hartman is entitled to the actual amounts paid by him from **March 1993 through April 1994** and St. Paul cannot contest the 'reasonableness' of those amounts, due to breach of its 'duty to defend' from **March '93 to April '94**]." (emphasis added) Finally, Hartman included as a contested issue of law "[w]hether St. Paul is precluded as a matter of law from challenging the reasonableness of the defense costs paid and incurred by Hartman in the Wilcox suit **from April 1993 through trial of this case in April 1994**." (emphasis added)

The jury found as follows:

breach of St. Paul's duty of good faith and fair dealing, and violation of Texas Insurance Code Article 21.21. St. Paul counterclaimed for declaratory judgment regarding its duty to defend and indemnify.

---

1. During the pendency of the Wilcox suit, Wilcox added—then withdrew—negligence claims, and proceeded with added claims based on intentional and malicious conduct.

2. Specifically, Hartman alleged breach of contractual duty to defend and indemnify,

1) St. Paul was not negligent in failing to settle Wilcox's claims against Hartman;

2) Hartman was negligent in failing to settle Wilcox's claims against him and such negligence proximately caused injury or damage;

3) Reasonable and necessary attorneys' fees and expenses for the period of March 1993 through February 1994 were $333,000;

4) Hartman failed to give St. Paul prompt written notice and St. Paul was prejudiced thereby;

5) St. Paul complied with its duty of good faith and fair dealing to Hartman;

6) St. Paul engaged in no unfair or deceptive insurance act or practice; and

7) There was no reasonable basis to believe St. Paul engaged in willful, wanton or malicious conduct toward Hartman.

Based on the foregoing, the court entered a take nothing judgment against Hartman. On appeal, the Fifth Circuit affirmed in part and reversed in part, holding that St. Paul had a duty to defend Wilcox's Second through Fifth Counterclaims, but not his First. The Fifth Circuit determined that Hartman had promptly notified St. Paul in 1992 of the Wilcox's First Counterclaim and that "the trial court erred in deciding that Hartman forfeited coverage under his 1992 CGL policy for Wilcox's Second, Third, Fourth and Fifth Supplemental Counterclaims because he did not give prompt notice of the February 6th letter or the filing of Wilcox's suit in December 1990." Based on the jury's finding that reasonable attorneys' fees incurred by Hartman to defend the second through fifth counterclaims for the period March 1993 to February 1994 were $333,000, the court ruled that "Hartman is entitled to judgment for at least that sum." The court then remanded the action "for further proceedings consistent herewith."

On rehearing, the Fifth Circuit stated: "On remand, the district court is instructed to enter judgment for Hartman in the sum of $333,000 and the court may consider the parties' arguments concerning whether Hartman is entitled to additional attorneys' fees for prosecuting this action." Finally, the court entered an order on recall of mandate stating: "The district court should on remand award prejudgment and post-judgment interest based on applicable law when it enters judgment."

On March 13, 1997, this Court entered an order allowing Plaintiff to withdraw the $364,000 which Defendant had deposited into the registry of the court [representing the $333,000 found by the jury plus interest]. This withdrawal was without waiver of or prejudice to Plaintiff's rights to seek additional amounts he may be entitled to receive and/or recover in this action or in other litigation existing between Plaintiff and Defendant. Finally, the Court ordered that the amount withdrawn will be credited to the amount the Court determines Defendant owes in the Final Judgment eventually entered in this case. On April 1, 1998, this Court determined that Hartman was not entitled to recover attorney fees incurred in prosecuting the St. Paul I suit, an entered an order accordingly. On September 4, 1998, final judgment was entered in St. Paul I.

### St. Paul II

Hartman filed the instant suit ("St. Paul II") alleging breach of contract; breach of the duty of good faith and fair dealing; and violation of Texas Insurance Code Articles 21.21 and 21.55, seeking as actual damages recovery of attorneys' fees and expenses incurred in the Wilcox litigation post February 1994 and the "value" of the settlement Hartman reached with Wilcox in August of 1994, along with statutory penalties for St. Paul's alleged failure timely to pay Hartman the $333,000 directed by the Fifth Circuit's mandate, attorneys' fees for prosecuting St. Paul II and punitive damages for St. Paul's alleged gross negligence. St. Paul answered, asserting twenty one affirmative defenses, including res judicata.

Hartman moves for partial summary judgment, seeking a judicial determination

that St. Paul is collaterally estopped, by virtue of the Fifth Circuit's opinion in St. Paul I, from denying it had a duty to defend Hartman for the time periods for which damages are sought in St. Paul II. St. Paul seeks a summary judgment that Hartman is precluded, by virtue of St. Paul I, from recovering additional damages in St. Paul II for breach of its duty to defend Hartman in the Wilcox Suit. In short, St. Paul contends that res judicata bars Hartman from litigating in St. Paul II what he could have and should have in St. Paul I. Because the Court finds the res judicata argument determinative of the issues, it does not reach the collateral estoppel argument raised by Hartman.

## ANALYSIS

### Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thomas v. Harris County*, 784 F.2d 648, 651 (5th Cir.1986). The parties do not dispute the procedural facts presented; instead, they contest the legal effect of those facts on the current action.

### Res Judicata

■ A prior judgment will bar a subsequent action when the parties are identical in both suits, the prior judgment was rendered by a court of competent jurisdiction, a final judgment on the merits exists and the same cause of action is involved in both ·cases.[3] *See Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir.1983). "The rule is that res judicata bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, ... not merely those that were adjudicated." *Id.* "The doctrine of res judicata contemplates, at a minimum, that courts be not required to adjudicate, nor defendants to address, successive actions arising out of the same transaction, asserting breach of the same duty." *Id.* at 563. The question becomes "Was the former adjudication one on the merits, and could the present theory of action have been presented there?" *Nilsen*, 701 F.2d at 561

"Regarding the underlying cause of action, the critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on the same nucleus of operative facts." *Howe v. Vaughan*, 913 F.2d 1138, 1144 (5th Cir.1990). "[The] transaction may be single despite different harms, substantive theories, measure or kind of relief." *Nilsen*, 701 F.2d at 560. "Therefore, any inquiry as to the application of the doctrine of res judicata must ... [involve] a pragmatic assessment of whether or not the primary right and duty and delict or wrong are the same in each action." *Id.* at 561.

■ The Court finds that the primary duty in both actions involved St. Paul's duty to defend Hartman in the Wilcox Suit. Its failure to do so is the same harm in both actions. Merely because this single transaction gave rise to damages for the different time periods identified in each suit does not exempt it from the application of res judicata.[4] The Restate-

---

3. The parties do not contest the first two elements. At the time of briefing, the parties disputed the finality of the judgment on the merits in the St. Paul I suit because the Court had not yet entered a final judgment awarding pre–and post–judgment interest. Because such a judgment has been entered as of September 4, 1998, finality is no longer an issue.

4. The Court finds inapposite the cases relied upon by Hartman wherein claims arising out of events occurring subsequent to the filing of suit were not barred. Separate events are not the same as separate damages arising out of the same event. Moreover, the Court is not persuaded that, merely because Hartman's attorneys billed him monthly, somehow that fact transforms the contract between him and St. Paul into one akin to an installment con-

ment contemplates the very issue before the Court:

> Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury. Accordingly, if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged into the judgment and may not be split. It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in fact to be unexpectedly large in excess of the judgment.

RESTATEMENT (SECOND) OF JUDGMENTS at § 25 cmt. c.

Res judicata will not bar the St. Paul II suit, however, if Hartman was "unable, through no fault of his own," to bring the instant claims in St. Paul I—e.g., if the Court, not Hartman, engaged in the "cause splitting." *Id.* at 563. Hartman claims this to be the case because the discovery and pleading amendment deadlines in St. Paul I predated the damages alleged in St. Paul II. The Court is not persuaded that Hartman lacked a full and fair opportunity to litigate the St. Paul II claims in St. Paul I. Hartman could have sought leave to amend his pleadings to incorporate continuing damages that he knew he would incur, or moved to abate the suit pending resolution of the Wilcox matter. Instead, he elected to go forward on his pleadings. As St. Paul argues, it appears Hartman is in a "predicament of his own making."

tract, so that Hartman can allege a breach-a-month. There is one breach here, with ongoing damages.

1. Kenneth Apfel was nominated for the position of Commissioner on May 23, 1997 and confirmed by the Senate on September 19, 1997. Kenneth Apfel succeeds John J. Callahan who was appointed acting Commissioner

*Howell,* 674 F.2d 1027, 1031 n. 9 (5th Cir. 1982). *See also Agrilectric Power Partners, Ltd. v. General Electric Co.,* 20 F.3d 663, 665 (5th Cir.1994); *Nilsen,* 701 F.2d at 563. As a result, res judicata bars him from litigating extra damages now. Accordingly, St. Paul's motion is **GRANTED** to the extent that Hartman is precluded from pursuing in St. Paul II claims for damages related to St. Paul's failure to defend, including the purported "cost of defense settlement" reached in the Wilcox Suit. St. Paul's motion is **DENIED,** however, as to Hartman's claims for St. Paul's purported failure timely to pay Hartman the $333,000.00—an issue addressed by separate cross motions between the parties.