# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2021

Lyle W. Cayce
Clerk

No. 21-50274

In the Matter of BVS Construction, Incorporated

*Debtor*,

BVS Construction, Incorporated, *Debtor*,

*Appellant*,

*versus*

Prosperity Bank, *Creditor*,

*Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:20-CV-261

Before Clement, Southwick, and Willett, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

BVS Construction, Inc. ("BVS") filed a voluntary Chapter 11 petition for bankruptcy on January 2, 2019. In the ensuing proceeding, one of BVS's secured creditors, Prosperity Bank ("Prosperity"), filed a proof of claim for $1,333,695.84. BVS filed a claim objection, arguing that Prosperity's claim was for the wrong amount. The bankruptcy court held a hearing and

No. 21-50274

concluded that the doctrines of res judicata, judicial estoppel, and judicial admission barred BVS's claim objection on the ground that it was ultimately based on the alleged impropriety of Prosperity's claim against BVS's from its prior bankruptcy in 2015.

The district court affirmed the bankruptcy court's order overruling BVS's claim objection and allowing Prosperity's claim.  BVS timely appealed.  For the following reasons, we AFFIRM.

I.

BVS is a Texas-based concrete and construction company owned by Ricky Joe Palasota, Sr. and his wife.  In November of 2014, BVS and Mr. Palasota separately filed voluntary Chapter 11 petitions for bankruptcy in the United States Bankruptcy Court for the Western District of Texas.  In September of 2015, BVS and Mr. Palasota filed an amended "joint" plan of reorganization (the "2015 Plan").[1]  The 2015 Plan set out, in detail, the amounts BVS owed to its creditors.  Of relevance here, the 2015 Plan described the amounts BVS owed to one of its secured creditors, Prosperity, on five separate promissory notes—which Prosperity rolled into one note prior to BVS's and Mr. Palasota's bankruptcy petitions.  The 2015 Plan provided as follows:

> Prosperity shall have an Allowed Secured Claim in the amount of $1,812,472.43 (the "Prosperity Claim").  The Prosperity Claim shall be paid based upon a 120 month amortization with interest at the rate of 5% per annum.  Commencing on the

---

[1] Prosperity correctly observes in its brief that, although BVS's and Mr. Palasota's "separate bankruptcy cases were never formally combined or jointly administered, BVS and Palasota each filed an identical 'Joint' Plan of Reorganization on September 15, 2015." This opinion will refer to them collectively as the "2015 Plan."

Effective Date, the Debtor, BVS, shall make 59 equal payments of $19,224.72 and one payment on the 60th month of all outstanding principal and interest. The payments shall be due on the 15th day of each month. The Debtor shall receive credit on the Prosperity Claim for all amounts paid post-petition pre-confirmation on the Prosperity Claim.

BVS and Prosperity agree that the "Effective Date" was November 8, 2015. Mr. Palasota, in his individual capacity *and* on behalf of BVS, signed the 2015 Plan, to which *no objection* was filed. On September 25, 2015, the bankruptcy court confirmed the 2015 Plan; neither Mr. Palasota nor BVS appealed that order.

For thirty-eight straight months following the Effective Date of the 2015 Plan, BVS made payments to Prosperity according to the terms of the 2015 Plan, which Prosperity applied to BVS's principal and interest obligations. But BVS did not make all fifty-nine monthly payments as required by the 2015 Plan, nor did it make the sixtieth "balloon payment," which was to equal the amount outstanding on the claim after BVS made its fifty-nine monthly payments. BVS stopped making its monthly payments after making the first thirty-eight because in January of 2019, it again filed for bankruptcy.

In the second bankruptcy, Prosperity filed a proof of claim in the amount of $1,333,695.84. According to Prosperity, this claim amount accounted for every payment it had received from BVS as of the petition date of the second bankruptcy. BVS filed a claim objection, and Prosperity filed a response. In March of 2020, the bankruptcy court held a hearing on the dispute.

At the hearing, BVS argued that the amount of Prosperity's claim in the second bankruptcy was incorrect because (a) it was calculated based on

an incorrect claim amount in the 2015 Plan, and (b) it failed to account for certain payments that BVS made to Prosperity on the claim from July to October of 2015 and May to November of 2019. Prosperity argued that it was BVS and Mr. Palasota that proposed the 2015 Plan that the bankruptcy court ultimately confirmed, and that BVS failed to object to Prosperity's claim in the 2015 Plan or otherwise seek direct appeal after the bankruptcy court confirmed the 2015 Plan. Prosperity maintained that the 2015 Plan set out its claim against BVS in detail, and that BVS clearly had no legitimate objection to that amount, as evidenced by its failure to object or appeal and by its subsequent payments to Prosperity pursuant to the 2015 Plan. Finally, Prosperity claimed that it applied the payments BVS made from July to October of 2015 to "accrued interest," and that its ledger reflected the payments it received from BVS between May and November of 2019.

At the conclusion of the hearing, the bankruptcy court orally overruled BVS's claim objection and allowed Prosperity's claim of $1,333,695.84. It found that the 2015 Plan, *which BVS and Mr. Palasota proposed*, described BVS's debt to Prosperity in great detail and that neither BVS nor Mr. Palasota objected to or disputed Prosperity's claim amount in that plan. It further found that BVS made payments pursuant to the 2015 Plan for thirty-eight straight months and that BVS did not make the sixtieth "balloon payment." Based on these findings, it concluded that the doctrines of res judicata, judicial estoppel, and judicial admission barred BVS's claim objection in the second bankruptcy to the extent it was premised on the impropriety of Prosperity's claim in the 2015 Plan.

BVS timely filed a notice of appeal in the United States District Court for the Western District of Texas. The district court affirmed the judgment of the bankruptcy court and dismissed the appeal. BVS timely appealed.

## II.

"This Court 'review[s] the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court.'" *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 (5th Cir. 2013) (quoting *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)). Sitting as an appellate court, the district court reviews a bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Gerhardt*, 348 F.3d at 91.

## III.

BVS argues for the first time on appeal that the bankruptcy court lacked subject matter jurisdiction to allow Prosperity's claim in the second bankruptcy. We disagree. The bankruptcy court has jurisdiction over core proceedings, which include the allowance or disallowance of claims against the debtor's estate. This argument is addressed in subsection A.

BVS also argues that the district court erred by affirming the bankruptcy court's order overruling its claim objection and allowing Prosperity's claim in the amount of $1,333,695.84. We disagree. The bankruptcy court correctly concluded that res judicata precludes BVS's claim objection, to the extent it is based on the argument that Prosperity's claim in the 2015 Plan was for the wrong amount. This argument is addressed in subsection B.

Relatedly, BVS argues that Prosperity's claim, even if allowed, is for the wrong amount. We disagree. The bankruptcy court's allowance of Prosperity's claim of $1,333,695.84, rather than for some lower amount as urged by BVS, is a factual determination reviewed for clear error. Based on the evidence in the record, the bankruptcy court did not clearly err. This point is addressed in subsection C.

No. 21-50274

## A.

BVS argues that the bankruptcy court exceeded its subject matter jurisdiction by allowing Prosperity's claim in the second bankruptcy. It argues that, although the 2015 Plan directed BVS to make payments to Prosperity for the amounts owed on the five underlying promissory notes, in reality BVS is not liable for the full claim amount because the Palasotas are individually liable for the debt under some of the notes. The Palasotas, BVS explains, individually executed Note Nos. 1, 3, and 4, which make up a substantial portion of the debt owed to Prosperity. But, BVS argues, neither the 2015 Plan, nor the five underlying promissory notes, shifted liability for *all* the debt from the Palasotas to BVS. Nor did the 2015 Plan otherwise authorize the bankruptcy court to allow Prosperity's claim against BVS as to the *entire* amount owed—including the amounts owed on Note Nos. 1, 3, and 4 specifically. Thus, the bankruptcy court lacked subject matter jurisdiction to allow the same.

Prosperity rejoins that this argument does not implicate the bankruptcy court's subject matter jurisdiction. And in any event, it argues, the 2015 Plan *does* impose liability on BVS to make payments to Prosperity for the entire amount of the debt owed under the promissory notes.

We agree with Prosperity. "Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'" *Stern v. Marshall*, 564 U.S. 462, 474 (2011) (quoting 28 U.S.C. § 157(b)(1)). Core proceedings include, *inter alia*, "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). The issue in this case is whether and to what extent Prosperity has a secured claim against BVS in the second bankruptcy. The bankruptcy court answered both questions in the affirmative, allowing Prosperity's claim against BVS for $1,333,695.84. Thus, it allowed a claim against the estate—an action that

6

without question falls within the bankruptcy court's jurisdiction under § 157(b)(1) and (2)(B).

To be sure, BVS and Prosperity disagree about whether the bankruptcy court *properly* allowed Prosperity's claim, and whether it did so in the *right amount*—Prosperity argues that it did, and BVS argues that it did not. But whether the bankruptcy court's allowance of Prosperity's claim was *proper* is an entirely different question from whether it had the *jurisdiction* to do so. The *propriety* of the bankruptcy court's determination to allow or disallow a claim against the debtor's estate is simply not a jurisdictional inquiry.

Accordingly, the bankruptcy court did not lack subject matter jurisdiction to allow Prosperity's claim of $1,333,695.84 against BVS in the second bankruptcy.

## B.

The bankruptcy court did not err in determining that res judicata bars BVS from objecting to Prosperity's claim in the second bankruptcy, to the extent its objection is premised on the impropriety of Prosperity's claim amount in the 2015 Plan.

In general, a bankruptcy court's order is "entitled to the effect of *res judicata*." *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987) (citing *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984)). The elements of res judicata are well settled in the Fifth Circuit and are as follows: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt,*

*L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

It is undisputed that the first three requisites of res judicata are satisfied here. BVS and Prosperity were both parties to the first bankruptcy proceeding, the bankruptcy court had jurisdiction to issue the judgment confirming the 2015 Plan, and the judgment confirming the 2015 Plan was a final judgment on the merits. *See, e.g.*, *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992) ("It has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes."). The parties dispute only the fourth element: whether the second bankruptcy proceeding constitutes a new cause of action.

We conclude that it does not. BVS's claim objection is barred by res judicata because (a) Prosperity's claim in the second bankruptcy—as it relates to whether Prosperity's claim in the 2015 Plan was for the right amount—arises out of the same transaction that was the subject of the 2015 Plan; and (b) BVS could have made this argument in the first bankruptcy, but it did not. We explain the bases for these two conclusions in parts 1 and 2, below. The effect of this holding is that BVS is *bound*, on res judicata grounds, by Prosperity's claim in the 2015 Plan.

1.

The Fifth Circuit employs the transactional test to determine whether two suits involve the same cause of action for purposes of res judicata. *See In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (en banc)). Under the transactional test, the inquiry focuses not on the contours of "the relief requested or the theory asserted," but instead on "whether [the] plaintiff bases the two actions on the same nucleus of operative facts." *Id.* "[R]es judicata 'bars all

claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication . . . .'" *Id.* (quoting *Nilsen*, 701 F.2d at 560).

BVS argues that the first and second bankruptcies involve different causes of action because it now disputes whether Prosperity has any claim at all, whereas in the first bankruptcy it did not make that claim. More specifically, BVS claims that it already satisfied its obligations to Prosperity based on: (a) the payments it made to Prosperity under certain forbearance agreements prior to the first bankruptcy, *plus* (b) the payments it made between July and October of 2015, the payments it made pursuant to the 2015 Plan, and the payments it made between May and November of 2019.

Prosperity argues that this is not a separate cause of action at all. It argues that its claim in the second bankruptcy is tied directly to the amount of its claim in the first bankruptcy, both of which arose from the same facts that were available to both parties prior to and during the first bankruptcy proceeding. And because BVS did not object to Prosperity's claim in the 2015 Plan or later object to the plan's confirmation—a plan that BVS *itself proposed*—Prosperity argues that BVS is barred from maintaining that claim objection now. It further argues that it properly credited BVS for every payment it received prior to the petition date of the second bankruptcy.

We agree with Prosperity. Our decisions in *Eubanks* and *Howe* are instructive as to what constitutes an identity of claims for res judicata purposes in similar circumstances. In *Eubanks*, we considered, *inter alia*, whether a Chapter 11 plan of reorganization had res judicata effect on the debtor's lender liability claims subsequently brought in a separate action against certain creditor banks. *Eubanks*, 977 F.2d at 168–69. The debtor based his lender liability claims on a loan transaction initially intended to support a renovation project. *Id.* at 168, 172. The project ultimately failed

and forced the debtor into bankruptcy, and one of the banks made a claim against the debtor's estate, which was uncontested and allowed as part of the plan of reorganization. *Id.* In considering whether the plan of reorganization had res judicata effect on the debtor's subsequent lender liability claims, we concluded that it did because "the loan transaction at the heart of the [lender liability] litigation was also the source of [the bank's] claim against the [debtor's] estate." *Id.* at 172. Because the debtor's lender liability suit "put[] into issue the same facts which would determine, *inter alia*, the treatment and amount of the debt owed to [the bank]," we held that there was an identity of claims between the confirmation order and the debtor's lender liability action. *Id.* at 172–73.

A similar principle informed our earlier decision in *Howe*. There, the debtors filed for voluntary Chapter 11 relief, and a creditor filed a proof of claim based on amounts the debtors owed on two promissory notes secured by mortgages on their home and real property. *Howe*, 913 F.2d at 1140. Five years after the confirmation of the plan of reorganization, the debtors brought lender liability claims against the creditor. *Id.* In considering whether the plan of reorganization had res judicata effect on the debtors' lender liability claims, we determined that it did because "[t]he loan transaction at the heart of the [lender liability] litigation was also the source of [the creditor's] claim against the estate." *Id.* at 1144. Thus, we held, the two actions "constitute[d] the same claim . . . for res judicata purposes[]" because the debtors' lender liability allegations were "based on the same nucleus of operative facts that informed their earlier bankruptcy proceedings." *Id.* at 1144–45.

Applying the principles set forth in *Eubanks* and *Howe*, the question here becomes whether the transactions at the heart of BVS's claim objection in the second bankruptcy were the source of Prosperity's claim in the first bankruptcy. That is, whether BVS's claim objection in the second

bankruptcy is based on the same transaction or series of transactions that gave rise to the terms of the 2015 Plan as it relates to the amount of Prosperity's claim. We hold that it is.

The record reflects that BVS's claim objection in the second bankruptcy depends entirely on, and necessarily arises out of, the subject matter that formed the basis of Prosperity's claim in the first bankruptcy—specifically, the amounts BVS owed to Prosperity on the underlying promissory notes. In fact, the basis of Prosperity's claim in the second bankruptcy is *identical to* the basis of its claim in the first bankruptcy: that it (still) has a claim against BVS for the amounts BVS owed it on the underlying promissory notes. The only reason that Prosperity's claim amount is any different in the second bankruptcy than the first is because Prosperity reduced its claim from the first bankruptcy by all the amounts it received from BVS prior to the petition date of the second bankruptcy. Prosperity's ledger, admitted into evidence in the bankruptcy court's hearing, reflects this fact. Thus, following the reasoning in *Eubanks* and *Howe*, BVS's claim objection in the second bankruptcy arises out of the same transaction that was the subject of the 2015 Plan.

2.

Even if all four elements of res judicata are present, res judicata does not bar litigation of a claim unless the party against whom it is invoked "could or should have brought its claim in the former proceeding." *Eubanks*, 977 F.2d at 173 (citing *Howe*, 913 F.2d at 1145).

The law in the Fifth Circuit is settled that "[q]uestions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on *direct appeal. . . .*" and that a litigant is "foreclosed from that avenue of review [if] it chose not to pursue it." *Republic*, 815 F.2d at 1050 (emphasis added). BVS's claim objection in the second bankruptcy

is undeniably a question about the propriety of Prosperity's claim in the 2015 Plan. Thus, BVS *could have* raised this issue during the first bankruptcy proceeding—either in the form of a direct appeal of the order confirming the 2015 Plan, or alternatively in the form of a claim objection. But BVS did not.

In fact, BVS admitted explicitly at the hearing that it could have objected to the amount of Prosperity's claim in the 2015 Plan, or appealed the order confirming the 2015 Plan, but chose not to. It argued only that it failed to do so on the advice of counsel and because it was under the impression that it could later object.

Because BVS could have objected to the amount of Prosperity's claim in the first bankruptcy or directly appealed the bankruptcy court's order confirming the 2015 Plan, but did neither, it is precluded from now arguing that Prosperity's claim in the first bankruptcy was for the wrong amount.[2]

## C.

Finally, the bankruptcy court did not clearly err in determining that Prosperity's claim was for the correct amount. The ultimate effect of the bankruptcy court's ruling is to allow Prosperity's secured claim of $1,333,695.84. Given that BVS is bound by the amount of Prosperity's claim in the 2015 Plan, the only remaining question is whether Prosperity's current claim of $1,333,695.84 is for the right amount. This, in turn, depends on whether the $1,333,695.84 claim properly accounts for all of BVS's payments to Prosperity prior to the petition date of the second bankruptcy. Those payments can be grouped as follows: (a) post-petition, pre-confirmation

---

[2] This is not to say that BVS is claim precluded from maintaining *any* claim objection in the second bankruptcy. This just means that it is barred from maintaining a claim objection that is premised, in part or in whole, on the impropriety of Prosperity's claim from the 2015 Plan.

payments made between July and October 2015, and (b) 2015 Plan payments, beginning on November 8, 2015 (the Effective Date of the 2015 Plan) and ending on January 2, 2019 (the petition date of the second bankruptcy). In allowing Prosperity's claim of $1,333,695.84, the bankruptcy court implicitly determined that Prosperity did indeed credit BVS accordingly. This is merely a factual determination reviewed for clear error.

At the hearing, Prosperity offered its ledger into evidence, which the bankruptcy court admitted. Not only that, but it put on a witness to testify as to the ledger's accuracy. Prosperity's counsel argued that Prosperity applied the amounts it received from BVS from July to October of 2015 to accrued interest. Prosperity's ledger appears to account for these amounts.

Prosperity's ledger also reflects the payments BVS made pursuant to the 2015 Plan. In particular, it shows the thirty-eight payments that BVS made, which it appears Prosperity credited to BVS's respective principal and interest obligations.

BVS also argues that Prosperity should further have reduced its claim by the amount in payments BVS made to Prosperity between May and November of 2019. But this argument is misplaced. In a bankruptcy proceeding, once a creditor files a proof of claim, the bankruptcy court looks to 11 U.S.C. § 502 to determine whether the claim is allowed. Section 502(b) provides that, when an objection to a claim is made, the bankruptcy court "shall determine the amount of such claim . . . as of the date of the filing of the petition."

BVS is correct that Prosperity's claim does not account for the payments it made to Prosperity between May and November of 2019. But it made those payments *after* the petition date; thus, they were properly excluded from Prosperity's claim. Even still, these payments *do* appear in

Prosperity's ledger. They are just accounted for in the latest running balance, rather than in Prosperity's proof of claim.

Per Prosperity's ledger, Prosperity's claim against BVS as of the petition date of the second bankruptcy appears to be $1,333,695.84. The bankruptcy court did not clearly err in allowing the same.

IV.

For the foregoing reasons, the district court did not err by affirming the bankruptcy court's order allowing Prosperity's claim of $1,333,695.84 in the second bankruptcy.

The judgment is AFFIRMED.