United States Court of Appeals,

Fifth Circuit.

No. 92–4622

Summary Calendar.

PREMIUM FINANCE COMPANY, INC., Thomas M. Wright and Robert L. Wright, Sr., Plaintiffs–Appellants,

v.

EMPLOYERS REINSURANCE CORPORATION, Defendant–Appellee.

Dec. 28, 1992.

Appeal from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The plaintiffs-appellants appeal from a summary judgment entered against them by the district court. Because we find that the summary judgment was properly entered WE AFFIRM.

## I. FACTS

Premium Finance Company ("Premium") is in the insurance premium financing business. Premium was victimized by a complex insurance fraud scheme that was masterminded by Andre Coco. Andre Coco was the chief operating officer of the Edgar Coco Agency, Inc., a general insurance agent.

Andre Coco owned all of the stock in the Edgar Coco Agency. Coco and his wife were the only two members on the board of directors. Although, ostensibly her power in the agency was equivalent to her husband's, Mrs. Coco's power was in fact illusory. Coco made all the decisions concerning the Coco agency, and when he did acquire his wife's approval it was merely a formality. Furthermore, while the employees at the agency knew about Coco's scheme, they were not key participants, but only puppets dancing on Coco's string.

Andre Coco duped Premium into financing insurance payments for fictitious customers. Pursuant to an elaborate scheme, Coco would submit seemingly appropriate paperwork to Premium. Premium would in turn finance what it believed to be legitimate insurance purchases, by actual Edgar

Coco Agency customers.

In fact, the agreements between Coco and Premium contained misstatements regarding the existence of insurance policies and insureds, the amount of insurance premiums to be financed, the terms of the policies, the existence of powers of attorney, and other important, material information. When the dust settled, Coco had bilked Premium out of $1,613,181.50.[1]

Andre Coco was convicted on multiple felony charges associated with his criminal enterprise. In the interim, the Edgar Coco Agency filed for chapter 11 bankruptcy. Consequently, Premium commenced this action against Employers Reinsurance Corporation ("Employers"), seeking to recoup its lost money.

Employers had issued an insurance policy to the Edgar Coco Agency. The policy covered any and all damages occasioned by employees acting in the scope of their employment. The plaintiffs herein seek to impose liability on the insurance carrier based on the acts of Andre Coco. The amended provision of the policy that is at the heart of this controversy reads as follows:

> IT IS AGREED that this policy is extended to cover dishonest, fraudulent, criminal or malicious acts committed by an employee of the Named Insured, and paragraph (a) of Section [VI] of this policy captioned "exclusions,' is hereby amended accordingly. The coverage provided by the Endorsement shall extend to the Named Insured and any Insured, provided that such Insured did not personally participate in or ratify the dishonest, fraudulent or criminal act.

Further, Section V of the policy defines the term "Insured" "[to] include the Named Insured and any owner, partner, executive officer, director, stockholder or employee of the Named Insured while acting in the scope of that person's duties...."

## II. PROCEEDINGS

On May 31, 1989, the plaintiffs[2] commenced suit in the Western District of Louisiana against

---

[1] Apparently, Premium was able to recover some portion of the $1,613,181.50 that it transferred to Coco because it is currently owed only $844,576.21.

[2] Premium Finance Company was joined by Thomas M. Wright and Robert L. Wright, Sr. because they are liable for personal guaranties to Security First National Bank. The Wrights had executed personal guaranties to Security First National Bank as security for loans made to Premium. The loans provided Premium with the capital to finance the Coco deals.

Employers.[3] Employers responded with a summary judgment motion seeking dismissal on three grounds: (1) Coco's activities were not within his employment and, therefore, excluded from the policy; (2) the money sought by Premium was essentially a claim for return of premiums—also excluded in the policy; and (3) the policy does not indemnify the insured for punitive damages and, thus, the RICO claim is not covered.

On March 28, 1990, Judge Little granted a partial summary judgment as to any claim for funds in excess of actual damages, ie. the RICO claim. However, the court denied the motion on the first two grounds reasoning that (1) Coco was acting within the scope of his business when he procured funds for non-existent clients; and (2) Premium was seeking the return of cash, not the return of premiums that *it had paid.*

Employers then launched a second summary judgment attack. This time around, the defendant contended that Section VI(a) of the policy, as amended by Endorsement PAL–11, excludes coverage on the grounds that the "Named Insured," the Edgar Coco Agency, "participated in or ratified the fraudulent acts" committed by Andre Coco. The defendants asserted that Andre Coco's actions were tantamount to those of the agency itself. The plaintiffs argued that the "Named Insured" is the Agency and Coco himself is an employee. Therefore, because the policy was expressly meant to cover intentional acts of employees the policy should necessarily cover the acts of Coco.

On March 2, 1992, the district court rejected the plaintiffs' argument and granted summary judgment for the defendant. The court noted Section VI(a) of the policy, which expressly provided that coverage would not exist if "the Insured ... personally participate[d] in or ratif[ied] the [act]." The court then found that the "Named Insured," the Edgar Coco Agency, participated in and ratified Coco's criminal activity. Judge Little concluded that Coco and the Agency were essentially alter egos and, thus, Coco's actions were directly attributable to the Agency, thereby implicating the exclusion.

The court reasoned that Coco's actions were not those of a lone employee seeking to line his pockets at the expense of the "Named Insured." Rather, Coco's status coalesced into the Agency's

---

[3]Andre Coco and the Edgar Coco Agency were not made parties to this suit presumably because they are judgment proof.

because he was "the central nervous system" of the entity vested with exclusive decision making power. The district court rested decision on two Fifth Circuit cases that stated "[coverage exists for the] unauthorized intentional act of an employee, but [not] ... the deliberate execution of a preconcerted plan conceived in the mind of [the company] and carried out by ... key personnel." *FDIC v. Mmahat,* 907 F.2d 546 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991) (*citing Ashland Oil v. Miller Oil Purchasing Co.,* 678 F.2d 1293 (5th Cir.1982)). The plaintiffs now appeal.

## III. DISCUSSION

The plaintiffs contend on appeal: (1) the district court improvidently granted summary judgment because t he "Named Insured," the Edgar Coco Agency, is covered for actions of its employee Andre Coco; (2) ambiguity in the policy mandates a finding of coverage; (3) although Coco's actions were criminal he was still acting within the scope of his employment; (4) the policy covers damages allowed "by law," which includes RICO damages. We find that the district court properly granted summary judgment against the plaintiffs because Coco's actions were attributable to the Agency and clearly within the exclusion of the policy.

*i. Louisiana Law*

At the outset we note that a federal court sitting in diversity must apply the law of the forum state. *See Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Consequently, we must apply Louisiana law to the present controversy.

It is basic in the insurance field, and Louisiana is no different, that where a policy is clear and unequivocal it must be enforced as written. *See Pridgen v. Jones,* 556 So.2d 945, 948 (La.Ct.App.3d Cir.1990). Further, an endorsement merges into the policy and they must be harmonized when reading the document. *See Ledbetter v. Concord Gen. Corp.,* 564 So.2d 732, 735 (La.Ct.App.2d Cir.1990). Moreover, when considering an exclusionary clause, if we find that more than one interpret ation is possible, we must strictly construe the clause against the insurer. *See LeJeune v. Allstate Ins. Co.,* 365 So.2d 471, 478 (La.1978). We find no difficulty in reading the exclusionary clause. It was intended to deny coverage when the named insured "participated in or ratified" the acts

that give rise to liability.

*ii. Edgar Coco's Actions are Attributable to the Andre Coco Agency.*

The liability policy that Employers' issued to the Coco Agency was meant to protect it against the acts of errant employees, who, guided by personal motivation, engage in unauthorized activity resulting in liability. In keeping with this intent, the policy included an exclusion. The exclusion provided that the Agency would be covered so long as "[it] did not personally participate in or ratify the dishonest, fraudulent or criminal act."

The plaintiffs argue that the policy expressly covers actions "by an employee of the Named Insured." Therefore, necessarily the policy must cover the actions of Andre Coco—the employee. The defendants point to the exclusion and argue that the actions of Andre Coco are tantamount to actions of the Edgar Coco Agency. Therefore, the Agency "personally participated in or ratified" the deceitful actions of Coco.

Andre Coco was the alter ego of the Edgar Coco Agency. He was solely vested with all the decision-making power. For all intents and purposes, he was the only board of director for the Agency because his wife was a rubber stamp. Moreover, Andre Coco owned all of the stock in the Agency. Therefore, Andre Coco and the Edgar Coco Agency have coalesced into one entity for our purposes.

In *Ashland,* the president, vice president and three managers of a company conspired to commit an environmental tort. The Fifth Circuit, applying Louisiana law, attributed the actions of the these five individuals to the Named Insured, Rollins–Purle, Inc. The court reasoned:

> [This case] involves the authorized act of Rollins [the named insured corporation] itself. The highest officers and personnel of Rollins were privy to this disposal operation. This was not a reflexive react ion by one of Rollins' many limbs, but rather a deliberate execution of a preconcerted plan, conceived in the mind of Rollins and carried out by a central system of key Rollins personnel. *The intent to dispose of the waste in the manner detailed above was most definitely that of Rollins, the named insured.*

*Ashland,* 678 F.2d at 1317 (emphasis added).

The *Ashland* court therefore defined the parameters of the corporation in terms of the corporate cerebrum. The intent of the corporate control center is likewise the intent of the entity. Necessarily, an entity such as the Edgar Coco Agency, whose sole navigator is Andre Coco, fits

within the *Ashland* formula. Indeed, this case presents more appealing facts upon which to attribute to the corporate entity because Coco's power was extremely centralized.

In *Mmahat,* I was faced with a similar issue. In that case the FDIC sought to recover damages from the New England Insurance Co. based on the negligence of John Mmahat. However, New England did not insure Mmahat personally it had insured his law firm Mmahat & Duffy. The insurance policy had an exclusion for dishonesty, but retained coverage for "innocent co-insureds."

The FDIC, in seeking to impose liability under the policy, asserted that Mmahat & Duffy was such an "innocent co-insured." We held that the actions of Mmahat were tantamount to the actions of Mmahat & Duffy. *See Mmahat,* 907 F.2d at 553. In so holding, we distinguished between cases involving one isolated action taken by key personnel from those involving a systematic, continuous, preconceived, and deliberate scheme. *See id.*

The only case that we could locate discussing this exact provision is *Employers Reinsurance Corp. v. United Fire and Casualty Co.,* 1992 WL 55010 (Minn.Ct.App. March 24, 1992). Although, we realize that the decision is unpublished, we mention it only to buttress our interpretation of the same provision. Interestingly, and perhaps not surprisingly, Employers, the appellee herein, had issued a policy with the same exclusion at issue here.

In *United Fire,* Employers had issued a policy to R.L. Fulson and Associates, Inc. ("Fulson Assocs."). Robert L. Fulson ("Robert") was the sole shareholder, agent, and director of Fulson Assocs. In his capacity as such, he issued unauthorized bonds and retained premiums that were properly owed to United Fire. United Fire sought to impose liability on Employers for the actions of Robert. Similarly, Employers defended on the ground that Robert's actions were attributable to the named insured, Fulson Assocs.

The Minnesota Court of Appeals concluded that for all practical purposes Robert was the corporation. The court noted the centralized power in Fulton Assocs. and the deliberate, preconceived criminal enterprise. *United Fire,* presents an identical situation to the present dispute. Coco and Robert both engaged in criminal activity under the guise of a corporation and both were for all intents and purposes the cerebral force of the corporate entity. Therefore, in both cases the

actions taken by the individual are indistinguishable from those of the corporation.

The endorsement expressly excludes coverage when the named insured participates in or ratifies the criminal act. From the foregoing discussion, it is clear that the acts of the corporate control center are attributable to the corporation. Therefore, if actions taken by key personnel, in the course of a deliberate corporate policy or scheme, are within the exclusion, then those same actions are attributable to the named insured corporation.

## IV. CONCLUSION

The exclusion clearly operates to deny recovery on the insurance policy. Therefore, we need not address the appellants' remaining three contentions. The policy is unambiguous and we are not forced to presume coverage. Additionally, it is irrelevant whether or not Andre Coco acted within the scope of his employment because of our finding as to the exclusion. Finally, our determination that the exclusion applies, necessarily decides that RICO treble damages are unavailable—at least against Employers. The judgment of the district court is AFFIRMED.