**ORLEANS PARISH SCHOOL BOARD**

*v.*

**CHUBB CUSTOM INSURANCE COMPANY, et al.**

**No. CIV. A. 00–2226.**

United States District Court, E.D. Louisiana.

April 6, 2001.

Larry Charles Becnel, Robert M. Rosenberg, Polack, Rosenberg, Endom & Riess, LLP, New Orleans, LA, for Orleans Parish School Board.

Daniel Aubry Ranson, Michael Don Peytavin, Windhorst, Gaudry, Ranson, Higgins & Gremillion, LLP, Gretna, LA, for NME Hospitals Inc., Tenet Healthsystem Hospitals, Inc.

Matt J. Farley, Barbara Malik Weller, Krebs, Farley & Pelleteri, LLC, New Orleans, LA, for Chubb Custom Insurance Company.

D. Russell Holwadel, Adams & Johnston, New Orleans, LA, for Gulf Insurance Company.

J. Warren Gardner, Jr., Elizabeth Skelly Cordes, Christovich & Kearney, LLP, New Orleans, LA, for American International Specialty Lines Insurance Company.

John William Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, Carl R. Pebworth, Joseph H. Yeager, Jr., Baker & Daniels, Indianapolis, IN, for Bankers Life and Casualty Company.

Joseph F. Bishop, Garcia & Bishop, Metairie, LA, for Robert M. Carter, III.

### ORDER AND REASONS

CLEMENT, District Judge.

Before the Court are (1) defendant Chubb Custom Insurance Company's Motion for Summary Judgment, (2) plaintiff Orleans Parish School Board's Motion to Strike the Affidavit of Thomas B. Watkins (or, Alternatively, to Strike Portions Thereof), (3) plaintiff Orleans Parish School Board's Motion for Leave to File Opposition Affidavit, (4) defendant Banker's Life and Casualty Company's Motion for Summary Judgment, and (5) defendant American International Specialty Lines Insurance Company's Motion for Summary Judgment. For the following reasons, Chubb's motion is GRANTED; the School Board's motion to strike is GRANTED; the School Board's motion for leave to file affidavit is DENIED; Bankers' motion is GRANTED IN PART and DENIED IN PART; and AISLIC's motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Between April 1989 and August 1994, the Orleans Parish School Board ("School Board") hired Group Insurance Administration of Louisiana, Inc. ("GIA–LA") and Bankers Life and Casualty Company ("Bankers") to administer the School Board's health care benefits program. GIA–LA agreed to process School Board employees' medical claims and pay their health care providers, and Bankers agreed to provide the requisite life insurance and stop loss insurance for the plan.

GIA–LA filed for Chapter 7 bankruptcy protection in 1995. Since then, the School Board has filed several lawsuits asserting claims against GIA–LA, Bankers, and their insurers in an attempt to recover damages that resulted from GIA–LA's alleged failure to properly administer the health-care program. The School Board has settled every case but this one.

In the instant suit, the School Board first sued GIA–LA president Robert H. Carter, III ("Carter") as well as several insurance companies that had issued policies to GIA–LA. The School Board then joined Bankers as a defendant, alleging that Bankers is solidarily liable with GIA–LA and that it committed its own acts of malfeasance. Defendant Chubb has also sued Bankers, asserting that Bankers is derivatively liable for any amounts Chubb may owe the School Board. Chubb, Bankers, and American International Specialty Lines Insurance Company ("AISLIC")

now move for summary judgment on all claims asserted against them.

## II.   LAW AND ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the opposing party bears the burden of proof at trial, the moving party need not submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  *See Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir.1991). To oppose a motion for summary judgment, the non-movant must set forth specific facts to establish a genuine issue of material fact and cannot merely rest on allegations and denials. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.  Factual controversies are to be resolved in favor of the non-moving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

### A.   CHUBB'S MOTION FOR SUMMARY JUDGMENT

In 1989, defendant Chubb Insurance Company issued a $2 million crime-insurance policy to GIA–LA.  The policy provides coverage for "employee theft."  Under the policy, an "Employee" is a person in the service of GIA–LA whom GIA–LA "has the right to govern and direct in the performance of such service."  Chubb policy at § 7. Chubb moves for summary judgment on the grounds that any "employee theft" was committed by Carter, that Carter is not an employee within the meaning of the policy, and that the acts of Carter are the acts of GIA–LA.

The Fifth Circuit addressed this issue in *In the Matter of World Hospitality Ltd.*, 983 F.2d 650 (5th Cir.1993).  The *World Hospitality* court considered whether a 95% majority shareholder, who was also a director and officer of the insured corporation, was an employee as contemplated by an insurance policy covering illegal acts of the corporation's employees.  *Id.* at 651. The policy defined "employee" as "any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other   capacity)...whom   the   Insured...has the right to govern and direct in the performance of such service."  *Id.* Analyzing the caselaw from other circuits, the Fifth Circuit concluded that the majority shareholder was not an employee and stated that:

> All of these courts [that have denied coverage to controlling shareholders] have recognized that there is a strong policy reason for denying the corporation coverage under the bonds in question.   A   corporation   can   only   act through   its   officers   and   directors. When one person owns a controlling interest in the corporation and dominates the corporation's actions, his acts are the corporation's acts.   Allowing the corporation to recover for the owner's fraudulent or dishonest conduct would essentially allow the corporation to recover for its own fraudulent or dishonest acts.

The bonds, however, were clearly designed to insure the corporations against their employee's dishonest acts and not their own dishonest acts.

*Id.* (citing *California Union Ins. Co. v. Am. Diversified Sav.,* 948 F.2d 556, 566 (9th Cir.1991)). Ultimately, the *World Hospitality* court concluded that "the greater force of the authority lies in the holding that a majority shareholder who dominates his corporation is not an employee of the corporation within the meaning of the term as it is used in these bonds." *Id.* at 653.

In *Transit Mgmt. of Southeast Louisiana, Inc. v. Group Ins. Admin., Inc.,* 1997 WL 639019 (E.D.La. Oct.16, 1997)(Carr, J.), the court considered the same Chubb policy at issue in the case at bar. In *Transit Management,* Transit Management of Southeast Louisiana (TMSEL) and the bankruptcy trustee of GIA–LA sued Chubb, seeking coverage under its crime-insurance policy. In granting Chubb's motion for summary judgment, the *Transit Management* court held that Carter "is not an employee under the policy definition and his acts were acts of the companies." *Id.* at *2. In reaching its determination that Carter was not an employee of GIA–LA, the court noted that:

Carter owns 95% of the stock and is the sole director of GIA–USA, the parent company. He is president of all the companies and testified that he totally controls them and he could not conceive of anyone questioning that control. He said that money was moved from one of his companies to another as needed, at his direction or pursuant to his procedures, and he knew of the transfers from GIA Louisiana. There is no showing that anyone else acted without his direction or knowledge. The Treasurer testified that transfers from GIA Louisiana were pursuant to Carter's orders or procedures and were known to him.

*Id.*

Chubb argues that the Court is bound by res judicata to accept the conclusion reached in *Transit Management.* The School Board, Bankers, and intervenor Tenet Healthsystem Hospitals, Inc. ("Tenet") argue (1) that the Court is not bound by res judicata, (2) that the alter ego doctrine does not exist under Louisiana law, (3) that Carter is an employee within the definition of the Chubb policy, and (4) that issues of fact exist as to whether Carter committed the acts alleged in the School Board's complaint.

### 1. Res Judicata

■ The test for res judicata is well established in the Fifth Circuit. "The parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 559 (5th Cir.1983).

■ The School Board argues that res judicata cannot apply to the instant case because the *Transit Management* court could not exercise jurisdiction over the School Board's claim. *Transit Management* consisted of four consolidated cases filed in federal court in 1996 and 1997, in which TMSEL, Tenet, and GIA–LA's bankruptcy trustee brought claims against Robert Carter personally, GIA–LA, and GIA–LA's insurers. In April 1997, Chubb moved the *Transit Management* court to compel the School Board to interplead in the lawsuit, pursuant to Rule 22 of the Federal Rules of Civil Procedure. *Transit Mgmt. of Southeast Louisiana, Inc. v. Group Ins. Admin., Inc.,* 1997 WL 218253 (E.D.La. April 30, 1997).

The court denied Chubb's motion, holding that it could not exercise jurisdiction over the School Board's claims. The court held that it had jurisdiction over the Board's claims because they were related to the trustee's bankruptcy case, but that it was required to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(2):

> However, in a proceeding based on a state law claim which is related to a bankruptcy case, with respect to which the Court would have no jurisdiction absent that relatedness, on timely motion the Court *"shall* abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

*Id.* at *2 (quoting 28 U.S.C. § 1334(c)(2)).

The School Board argues that the jurisdictional limitation on the first proceeding precludes res judicata effect on the instant proceeding:

> Limitations on the jurisdiction or the nature of the proceedings brought in a first court may justify relaxation of the general requirement that all parts of a single claim or cause of action be advanced. It is clear enough that a litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding, and even clearer that no penalty should be inflicted if a deliberate effort to combine such matters has been expressly rejected. This principle...continues to apply as long as there was not a court that could have entertained a single proceeding to dispose of all aspects of a situation that otherwise would constitute a single claim.

18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4412 (1981), *quoted in Texas Employers' Ins.*

*Assn. v. Jackson*, 862 F.2d 491, 503 n. 15 (5th Cir.1988).

However, in *Transit Management* the School Board moved the court to abstain from exercising jurisdiction, and the court was required by law to honor that request. Accordingly, the School Board did in fact have an opportunity to litigate its claims in *Transit Management*, and the jurisdictional limitation which was imposed by the School Board does not preclude res judicata in the instant proceeding.

■ However, even without the jurisdictional bar, the question remains whether the School Board is in privity with GIA–LA's bankruptcy trustee. Chubb argues that "a trustee in bankruptcy is the creditors' representative...and therefore a judgment for or against the trustee is res judicata in a suit on the same claim by a creditor, provided no conflict of interest made the trustee's representation inadequate." *Matter of Met–L–Wood Corp.*, 861 F.2d 1012, 1017 (7th Cir.1988). The School Board argues that the trustee's representation was inadequate due to a conflict of interest between the Board and GIA–LA's hospital creditors, several of whom the Board had already paid. In addition, as the *Transit Management* court pointed out, the bankruptcy trustee did not advance the School Board's entire claim in the previous case because the trustee was not entitled to receive the proceeds of GIA–LA's insurance policies, which the School Board now seeks. The Court agrees that the trustee did not pursue the same claims as the School Board, and, accordingly, the Court does not find that res judicata applies to the instant case.

2. The Alter Ego Doctrine and Carter's Coverage under the Policy

■ Even though res judicata does not apply, the Court agrees with the *Transit*

*Management* court's conclusion that Carter is not covered under Chubb's policy. Bankers argues that the *Transit Management* court erred in applying the so-called "alter ego" doctrine because it does not exist in Louisiana. However, the Court need not reach this argument because a straightforward reading of the Chubb insurance policy establishes that Carter is not covered. Chubb's policy provides coverage for "direct losses of Money, Securities and other property caused by Theft or forgery by any identifiable Employee(s) of any Insured acting alone or in collusion with others." Policy at § 1.1. The policy defines "Employee" as

> one or more persons while in the regular service of any Insured in the ordinary course of the Insured's business during the term of this policy and whom any Insured compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service; and shall also mean: (A) any non-compensated officer of any Insured; [and]...(C) any director or trustee of any Insured while performing acts coming within the scope of the usual duties of an Employee.

Policy at § 7.

"It is basic in the insurance field, and Louisiana is no different, that where a policy is clear and unequivocal it must be enforced as written." *Premium Fin. Co., Inc. v. Employers Reins. Corp.*, 979 F.2d 1091, 1093 (5th Cir.1992). When considering an exclusionary clause, "if [the Court] find[s] more than one interpretation is possible, [it] must strictly construe the clause against the insurer." *Id.* In the case at bar, after careful consideration of the policy's definitions, the Court finds that Carter is not covered under the Chubb policy.

Carter owns 100% of the voting stock in GIA–USA, which owns 100% of GIA–LA. By his own admission, Carter makes all decisions concerning GIA–USA and its subsidiaries. *See* Carter dep., Sept. 18, 1998 at pp. 15–19. In 1995, Carter fired his own son because he "forgot who the boss was...he conflicted with me, and anybody that does that does not survive in my organization. It could be my mother." Carter dep., April 2, 1997 at pp. 109–110. When asked whether the GIA board of directors ever refused to approve any of his actions, Carter replied "Are you kidding? No...I can't imagine that happening." Carter dep., April 3, 1997, p. 19. In light of this evidence, the Court finds that Carter controlled GIA; the corporation did not have the right to govern and direct Carter's performance. Accordingly, the Court finds that Carter is not an "Employee" within the definition of the Chubb policy.

Bankers argues that Carter is in fact within the ambit of the policy definition because it includes as an employee "any non-compensated officer" and "any director...while performing acts coming within the scope of the usual duties of an Employee." Policy at § 7. The Court does not find that these provisions provide coverage for Carter's acts. Even strictly construing the policy against the insurer, the Court cannot conclude that Carter's alleged acts—transferring money between corporations for his own purposes—come within the scope of an employee's usual duties. Secondly, neither the School Board nor Bankers has argued that Carter was a "non-compensated officer." Accordingly, the Court finds that the only rational interpretation of the insurance policy excludes Carter from coverage.

### 3. Issues of Material Fact

Finally, even if Carter is excluded from coverage under the Chubb policy, the School Board and Bankers argue that genuine issues of material fact exist over whose actions gave rise to the losses at

issue. Chubb contends that all of the claims against it are solely related to Carter's alleged conduct. However, Bankers submits that the allegations against Chubb arise in part from wrongful acts that GIA–LA Treasurer Mohinder P. Sharma and Secretary Mathilda L. Rose may have committed. Chubb claims that this argument is disingenuous because Bankers has been involved in this litigation since 1995, has deposed Carter three times and Sharma twice, and has only now alleged that anyone other than Carter is at fault. Chubb further argues that if Bankers truly believes Sharma or Rose were responsible for the losses, it could have amended its petition to reflect such an allegation.

An argument identical to Bankers' was raised in *Transit Management* and rejected by the court on summary judgment:

> Other parties submitted other transcripts and documents, and suggest that the acts were committed by Carter and by the Treasurer and the Secretary of GIA–USA, who are employees.... There is no showing that anyone else acted without [Carter's] direction or knowledge. The Treasurer testified that transfers from GIA Louisiana were pursuant to Carter's orders or procedures and were known to him.

*Transit Mgmt.,* 1997 WL 639019, at *1.

Although the Court admits that many issues of material fact exist in the case at bar, the Court does not find that Bankers has raised a genuine issue of material fact as to Sharma's and Rose's involvement in the alleged scheme. In fact, Bankers alleges it its cross-claim that "GIA–USA and its affiliates were under the exclusive direction, control and management of Robert H. Carter, III as it relates to the actions complained of herein" and that the "repre-

sentations and omissions of GIA–USA and its affiliates were made by or through Carter with his knowledge and consent." Bankers Cross-cl. at ¶ 4. Like the *Transit Management* court, this Court does not find any evidence to support Bankers' claims that Sharma or Rose committed any improper acts.[1] Accordingly, the Court does not find that Bankers has raised a genuine issue of material fact sufficient to avoid summary judgment.

Since the plaintiffs allege that Carter fraudulently converted GIA–LA's funds and since the Court finds that Carter is not covered under Chubb's crime-insurance policy, Chubb Insurance Company's motion for summary judgment is GRANTED.

## B. THE SCHOOL BOARD'S MOTION TO STRIKE THE AFFIDAVIT OF THOMAS B. WATKINS

As evidence for its motion for summary judgment, Bankers has submitted the affidavit of one of its vice-presidents, Thomas B. Watkins. The School Board moves to strike Watkins' affidavit, contending that it violates the requirements of Federal Rule of Civil Procedure 56. In response to the School Board's motion, Bankers contends that "even were the Court to strike every portion of the Affidavit to which [the School Board] objects, there would still remain ample evidence to support Bankers' motion for summary judgment" and that the School Board's motion is "effectively mooted by the multiple sources of support for which Bankers cites the passages in question." Bankers' Mem. Opp. at 2–3. The Court agrees that Watkins' affidavit is cumulative to Bankers' other evidence and therefore unnecessary. Ac-

---

1. To oppose a motion for summary judgment, the non-movant must set forth specific facts to establish a genuine issue of material fact and cannot merely rest on allegations and denials. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

cordingly, the School Board's motion to strike is GRANTED.

## C. THE SCHOOL BOARD'S MOTION FOR LEAVE TO FILE OPPOSITION AFFIDAVIT

Also in conjunction with Bankers' motion for summary judgment, the School Board seeks to file the affidavit of J. Berengher Brechtel. Bankers objects on the grounds that the motion was not filed until the day before its summary judgment motion was set for hearing and argues that the School Board is attempting to prejudice Bankers by depriving it of any reasonable opportunity to respond to the affidavit. The affidavit concerns Bankers' alleged misrepresentations to the School Board. As will be explained below, the Court will not rule on Bankers' alleged misrepresentations until the parties clarify all the claims brought individually against Bankers. Accordingly, the School Board's motion is DENIED.

## D. BANKERS' MOTION FOR SUMMARY JUDGMENT

■ In its motion for summary judgment, Bankers presents several theories as to why it is not liable. Foremost, however, Bankers refutes the School Board's contention that it is solidarily liable with GIA–LA for GIA–LA's alleged malfeasance. The Court agrees with Bankers' position and does not find that Bankers and GIA–LA are solidarily liable. In *Transit Management of Southeast Louisiana, Inc. v. Group Insurance Administration, Inc.,* 226 F.3d 376 (5th Cir.2000), the Fifth Circuit examined this issue in great detail and concluded that, under Louisiana law, Bankers and GIA–LA did not form a joint venture and were not solidarily liable. The Fifth Circuit held (1) that Bankers is not "a joint venturer with GIA either by agreement or by estoppel" because GIA–

LA did not agree to share its profits or losses with Bankers, *id.* at 384, and (2) that Bankers and GIA–LA are not solidarily liable because they were receiving specific amounts of money for the performance of totally separate administrative services. *Id.* at 387.

For the same reasons stated in the earlier discussion of res judicata, the Court does not find that the Fifth Circuit's decision in *Transit Management* is binding on the School Board. However, the Court does find the Fifth Circuit's analysis persuasive and agrees with its conclusion. Accordingly, the Court finds that Bankers and GIA are not solidarily liable, and Bankers' motion for summary judgment on all claims based on solidary liability is GRANTED.

Having concluded that any claim based on solidary liability must fail, the Court must consider what other claims the School Board has asserted against Bankers. However, the Court finds that the basis of Chubb's and the School Board's remaining claims against Bankers is unclear and refrains from ruling on them at this time. Accordingly, Bankers is ordered to refile its motion to dismiss, specifically identifying and addressing any claims brought against it in its individual capacity.

## E. AISLIC'S MOTION FOR SUMMARY JUDGMENT

Defendant AISLIC also moves for summary judgment, claiming that its policy does not provide coverage for either the School Board's or Bankers' claims. AISLIC argues (1) that Carter's alleged acts are not wrongful acts within the meaning of the policy, (2) that several specific policy exclusions preclude coverage, and (3) that the claims in the case at bar are contractual claims which are excluded from coverage.

### 1. Wrongful Acts

■ First, AISLIC argues that its policy only provides coverage for wrongful acts. *See* AISLIC policy at § 1(A). A wrongful act means "any actual or alleged negligent act, error, or omission." *Id.* at § 2(O). AISLIC contends that Carter's actions were not negligent, but were intentional business decisions. Bankers and the School Board argue that Carter's intent is a genuine issue of material fact that precludes summary judgment. The Court agrees.

### 2. Specific Policy Exclusions

Similarly, genuine issues of material fact surround several of the AISLIC policy exclusions; and the Court cannot grant summary judgment on these grounds. Exclusion "A" precludes coverage for criminal or fraudulent acts. *See* AISLIC policy at § 3(A). Exclusion "B" excludes coverage for a wrongful act committed with knowledge that it is a wrongful act. *Id.* at § 3(B). At this stage of the proceedings, there is insufficient evidence for the Court to make a determination on these issues.

Exclusion "M" precludes coverage for any claim "arising out of commingling...of funds." *Id.* at § 3(M). The School Board argues that the AISLIC policy does not define commingling and that commingling is not the basis of its complaint. The Court agrees that commingling of funds is not the alleged operative wrong and finds that Exclusion "M" is inapplicable to the present situation.

■ Exclusion "T" excludes "claims arising out of a wrongful act which any Insured, prior to the effective date of this policy period, knew or could reasonably foresee would give rise to a claim." *Id.* at § 3(T). The Court addressed a similar, although not identical, contention in Gulf Insurance Company's ("Gulf") motion for summary judgment, in which Bankers argued that coverage existed under Gulf's "Multiple Claims" provision, which provided that "Multiple Claims" arising from the same "Wrongful Act" are deemed to have been made on the date the first of those claims is made against GIA–LA. *See* Rec. Doc. No. 45. The Court ruled that two previous state-court lawsuits, which sought timely payment of individual medical bills, did not arise from the same wrongful act as the instant suit, which includes claims for breach of contract, negligent misrepresentation, and unjust enrichment.

The School Board argues that the same reasoning applies to AISLIC's argument, and that the information from the previous suits is insufficient to charge GIA–LA with notice that the claims at issue in the instant case would eventually be made against it. The Court agrees. It is undisputed that Carter knew about the lawsuits Gracio DeSalvo, Gary Breaux, and Thomas Patterson filed against GIA in state court in 1994 and 1995. *See Gracio S. DeSalvo v. Orleans Parish School Board,* Civil Action No. 94–4450; *Gary Breaux v. Orleans Parish School Board,* Civil Action No. 95–1257; *Thomas Patterson v. Orleans Parish School Board,* Civil Action No. 95–9194. These plaintiffs claimed that they had not been reimbursed for medical expenses submitted to GIA–LA as third-party administrator for the School Board's health plan. The Court does not find that GIA–LA knew or could reasonably foresee that the previous claims for late payment of medical expenses would give rise to the instant lawsuit, which is based on allegations of breach of contract, misrepresentation and unjust enrichment.

### 3. Exclusion "H(3)" and Contractual Claims

■ The School Board has brought suit against AISLIC under Louisiana's direct

action statute, LA. REV. STAT. ANN. § 22:655 (West 2000). All parties agree that the Direct Action Statute applies only to torts, and not to contractual claims. AISLIC argues that all the claims asserted against it by the School Board and by Bankers are contractual claims that must be dismissed.

The School Board disputes AISLIC's contention that all its claims are based in contract and argues that it is entitled to proceed under the direct action statute because it has asserted several tort claims, including, among others, misappropriation, misrepresentation, and unjust enrichment. Although direct actions against insurers are limited to tort liability and not authorized in actions resulting from breach of contract, a lawsuit which presents numerous theories for recovery may proceed under the direct action statute. *See Champion v. Panel Era Mfg. Co.*, 410 So.2d 1230, 1235–36 (La.App. 3d Cir.1982). Since the School Board's complaint includes both tort claims and breach of contract claims, the Court finds that the School Board may proceed against AISLIC under the direct action statute.

AISLIC also argues that its policy exclusion for contractual claims precludes coverage for the School Board's allegations. Exclusion "H(3)" provides that the AISLIC policy does not apply to any claim "[a]rising out of liability assumed by the Insured under any oral or written contract or agreement except where such liability would otherwise exist apart from such contract or agreement and which is otherwise covered by this policy." AISLIC policy at § 3(H)(3). AISLIC argues that this exclusion precludes coverage for claims arising out of any alleged indemnity or hold harmless agreements in favor of the School Board or Bankers.

The *Transit Management* court granted summary judgment on this ground, holding that

The claims of TMSEL and the cross-claimants are based solely on GIA's failure to pay amounts it was liable to pay under its contract with TMSEL, a circumstance known to TMSEL and GIA before March 15, 1996...These exclusions, which were not addressed by TMSEL, clearly apply. AISLIC's motions for summary judgment will be granted.

*Transit Mgmt.*, 1998 WL 682269, at *15 (E.D.La. Oct.1, 1998).

The School Board and Bankers argue that this exclusion is inapplicable to the case at bar because the instant complaint is not based solely on GIA's failure to pay amounts due under the contract. As explained above, the claims asserted in the instant suit are based in both tort and contract. From the face of the complaint, the Court can separate the School Board's contractual claims and its tort claims; and the Court finds that Exclusion "H(3)" precludes coverage for contractual claims. Accordingly, AISLIC's motion for summary judgment on the contractual claims stated in Counts 1, 2, 3, 4, 5, 10, and 11 is GRANTED. However, its motion for summary judgment on the tort claims stated in Counts 6, 7, 8, and 9 is DENIED.

Finally, it appears that any liability AISLIC may have to Bankers is based on the possibility that Bankers and GIA–LA may be held solidarily liable. The Court has already determined that Bankers and GIA–LA are not solidarily liable, and it finds that the remaining basis of AISLIC's liability to Bankers is unclear. Accordingly, AISLIC is ordered to refile its motion for summary judgment against Bankers, identifying which claims are based on solidary liability and which claims are asserted by Bankers individually.

## CONCLUSION

IT IS ORDERED that

(1) Defendant Chubb Custom Insurance Company's motion for summary judgment is GRANTED.

(2) Plaintiff Orleans Parish School Board's Motion to Strike is GRANTED.

(3) Plaintiff Orleans Parish School Board's Motion for Leave to File Opposition Affidavit is DENIED.

(4) Defendant Bankers Life and Casualty Company's Motion for Summary Judgment on all claims involving its solidary liability is GRANTED. Bankers is ordered to refile its motion for summary judgment, specifically identifying and addressing all claims asserted against it individually.

(5) Defendant AISLIC's Motion for Summary Judgment on the School Board's contractual claims is GRANTED. AISLIC's Motion for Summary Judgment on the School Board's tort claims is DENIED. In addition, AISLIC is ordered to refile its motion for summary judgment against Bankers, identifying which claims are based on solidary liability and which claims are asserted by Bankers individually.