# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2023

Lyle W. Cayce
Clerk

No. 22-20364

Neiman Nix,

*Plaintiff—Appellant*,

*versus*

Major League Baseball,
Office of the Commissioner of Baseball;
Robert D. Manfred, Jr.;
Major League Baseball Players Association;
Angels Baseball L.P.;
Athletics Investment Group L.L.C.,
*also known as* Oakland Athletics Baseball Company;
AZPB Limited Partnership;
Associated Press, Incorporated; Howie Rumberg;
ESPN, Incorporated; USA Today, Incorporated;
NSF International; The Gatorade Company;
NFI Consumer Products; Cytosport, Incorporated;
Klean Athlete; Informed Choice;
Zachary[1] Grant Antero Britton;
John and Jane Doe (1-10); et al.,

*Defendants—Appellees*.

---

[1] In 2019, Britton expressed his desire to be known as "Zack" (derived from his birth and legal name, "Zackary") rather than "Zach" (his professional name up to that point). *See* Associated Press, *Yankees Reliever Zack Britton Now Using Legal Spelling of First Name*, ESPN (Feb. 11, 2019), https://www.espn.com/mlb/story/_/id/25974959/yankees-reliever-zack-britton-now-using-legal-spelling-first-name. This opinion uses Britton's legal name, "Zackary."

No. 22-20364

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-4180

---

Before SMITH, CLEMENT, and WILSON, *Circuit Judges*.
JERRY E. SMITH, *Circuit Judge*:

This appeal involves the latest in a series of unsuccessful lawsuits[2] by Neiman Nix, proceeding *pro se*, who sued Major League Baseball ("MLB"), the MLB Player's Association ("MLBPA"), and numerous other defendants, including media companies and nutritional companies.[3]

Nix strikes out once again. Accordingly, we affirm and grant the defendants' motion for sanctions.

---

[2] *Viz.*, *Nix v. MLB*, No. 14-004294-CA-01 (Fla. 11th Cir. Ct. Feb. 18, 2014); *Nix v. MLB*, No. 16-cv-5604 (S.D.N.Y. July 14, 2016); *Nix v. MLB*, No. 17-cv-1241 (S.D.N.Y. Feb. 17, 2017); *Nix v. MLB*, No. 159953/2016 (N.Y. Sup. Ct. Nov. 28, 2016); *Nix v. Luhnow*, No. 50-2018-CA-3920 (Fla. 15th Cir. Ct. Apr. 2, 2018); *Nix v. ESPN, Inc.*, No. 18-cv-22208 (S.D. Fla. June 4, 2018); *Nix v. MLB*, No. 2019-2611-CA-01 (Fla. 11th Cir. Ct. Jan. 25, 2019); *DNA Sports Performance Lab, Inc. v. MLB*, No. 3:20-cv-546-WHA (N.D. Cal. Jan. 23, 2020).

[3] The defendants fall into four categories: *First*, the MLB-related defendants, including MLB; MLB Commissioner Robert D. Manfred, Jr.; MLB employee Tim Maxey (although the complaint labels him a "Nutritional Defendant"); and thirty MLB Clubs. *Second*, the MLBPA-related defendants, including the MLBPA and MLBPA Executive Committee member Zackary Britton. *Third*, the "Media Defendants," including the Associated Press ("AP"); ESPN; USA Today; and Howie Rumberg, an AP editor during the relevant time period. *Fourth*, the "Nutritional Defendants," entities that produce, sell, or test nutritional products, including the Gatorade Company; CytoSport; NSF International; HVL LLC; LGC Science; Klean Athlete; and NFI Consumer Products ("Blue-Emu").

No. 22-20364

I.

A.

The following core facts are taken from Nix's complaint except for the dispositions of his prior lawsuits, which are subject to judicial notice. Nix is a former professional baseball player whose defunct company, DNA Sports Performance Lab, Inc., sold and distributed natural animal substances.

In 2013, MLB and the MLBPA began an investigation into the sale and use of performance-enhancing drugs; Nix and his company were among those investigated. Since then, Nix has filed a series of lawsuits across the country against MLB, the MLBPA, their members and employees, and an increasing number of assorted defendants.

As of 2015, the Joint Drug and Prevention Treatment Program ("Joint Drug Agreement"), which defines impermissible drug usage by MLB players, has banned insulin-like growth factor ("IGF-1") as a prohibited substance. The natural form of IGF-1 is required for human survival and occurs in detectable quantities in a wide variety of everyday food and drink, including meat and milk. The ban, per MLB, includes all-natural, synthetic, and bioidentical versions of IGF-1.

Nix claims that the ban is "fake" and selectively enforced. As the complaint interprets the ban, it is absolute: Despite that IGF-1 is necessary for survival, any player who consumes anything with even a quantum of IGF-1 violates the ban. Nix alleges that he is being unfairly targeted because MLB has not suspended every player who has consumed any natural or synthetic product that contains any "bio-available" level of IGF-1 and has targeted him for selling products containing IGF-1.

In 2016, Nix sued MLB and related defendants in the Southern District of New York for tortious interference with current and prospective business relationships. Various news agencies, including the Media Defendants,

3

reported on the suits. An article originally published by the AP and republished by other Media Defendants stated that in his suit, Nix had admitted that his company sold products containing IGF-1.

Nix then sued the AP, ESPN, and USA Today in the Southern District of Florida, claiming that the published statement was defamatory. During that lawsuit, Nix was informed that MLB had confirmed to the AP that the ban on IGF-1 did not distinguish based on type (i.e., natural versus synthetic).

The district court dismissed the case. In response to that dismissal, an AP sports editor, Howie Rumberg, emailed an MLB employee and said, "Not sure you even remember helping me with a few things on a defamation case involving PED [i.e., performance-enhancing drug] producer Neiman Nix but wanted to let you know his suit was tossed out of court." Nix alleges that statement was defamatory.

Nix then sued MLB and other defendants in several state and federal courts, including New York state court and California federal court. The court in California found that Nix failed to state any claim under Rule 12(b)(6) but allowed him to amend his complaint. Nix declined and dismissed with prejudice. The court then sanctioned Nix and his company; Nix has yet to pay the sanctions.

Throughout the years of litigation, MLB and the MLBPA have either continued or started sponsorship and promotional relationships with numerous Nutritional Defendants. For example, CytoSport advertises its Muscle Milk products using the likenesses of numerous MLBPA members and the trademarked logos of MLB clubs. Likewise, MLB announced a sponsorship agreement with Blue-Emu, which then marketed some of its products as the "official" ones of the MLB. Moreover, numerous products were tested and labeled "certified for sport" by defendant NSF.

We come to the lawsuit at issue here, which alleges nine causes of

No. 22-20364

action: (i) civil RICO claims against all defendants; (ii) fraud claims against all defendants; (iii) defamation claims against the AP and Rumberg; (iv) aiding and abetting claims against ESPN, the AP, USA Today, Tim Maxey, Zackary Britton, Muscle Milk, and Klean Athlete; (v) Lanham Act claims against Gatorade, NSF, Blue-Emu, Informed Choice, and numerous MLB Clubs; (vi) vicarious liability claims against Gatorade, NSF, and Britton; (vii) tortious interference claims against MLB and the MLBPA; (viii) unjust enrichment claims against all defendants; and (ix) mental anguish claims against all defendants.

Nix's core legal theory is that the defendants have selectively enforced the "fake" IGF-1 ban against him and no one else. Thus, for example, MLB and the MLBPA are lying whenever they claim that IGF-1 is banned, and the Nutritional Defendants are lying when they claim that their products are "certified for sport," because they contain some amount of IGF-1. Likewise, any media statements that he is a "PED producer" or sold banned substances are misleading or defamatory.

## B.

The defendants moved to dismiss under Rule 12(b)(6) in five separate motions; MLB and the MLBPA also moved for sanctions. The district court dismissed Nix's claims, denied him leave to amend, and imposed sanctions. The sanctions enjoin him from filing any new pleadings, cases, or motions in the Southern District of Texas against MLB, the MLBPA, and associated defendants without obtaining the permission of the Chief Judge of the Southern District of Texas. They also require him to file a copy of the district court opinion with any filing he makes in any other court.

## II.

"We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, 'accepting all well-pleaded facts as true and viewing those facts in the

light most favorable to the plaintiffs.'" *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). To survive a motion to dismiss, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[4] *Pro se* complaints are held to "less stringent standards" than are pleadings drafted by lawyers. *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. Unit A Feb. 1981).

We review the denial of leave to amend a complaint for abuse of discretion. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Likewise, we review an order granting an injunction under the abuse of discretion standard. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citing *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002)).

## III.

In short, Nix's claims bat far below the Mendoza line.[5] The court dismissed Nix's claims (except one) against MLB and the MLBPA as barred by

---

[4] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

[5] *See Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 U.S. App. LEXIS 4347, at *86 n.85 (5th Cir. Feb. 17, 2022) (unpublished) (Smith, J., dissenting) (explaining "Mendoza line").

No. 22-20364

claim preclusion and dismissed all his other claims for failure to state a claim. We agree.

A.

First, Nix's claims against MLB and the MLBPA, except his tortious interference claim, are barred by claim preclusion.[6] Claim preclusion applies when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *BVS Constr., Inc. v. Prosperity Bank*, 18 F.4th 169, 173 (5th Cir. 2021) (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)).[7] Nix challenges the fourth prong

---

[6] We note the irregular procedural posture of the MLB's and MLBPA's claim-preclusion argument, which they made only in their motions to dismiss. (No responsive pleadings were filed.) Claim preclusion is an affirmative defense that defendants must typically plead in responsive pleadings. Fed. R. Civ. P. 8(c)(1); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005). Responsive pleadings include answers to complaints but not motions to dismiss. *See* Fed. R. Civ. P. 7(a)(2). An exception to the procedural rule exists, however, where the elements of claim preclusion are clear on the face of the pleadings. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021). Because detailed references to Nix's prior court cases, including his lawsuit in California, pervade his complaint, the exception applies, and dismissal is permitted.

[7] The district court had to answer the threshold question whether to apply federal or state preclusion rules. Although the Fifth Circuit has not decided whether federal or state claim-preclusion law applies to claims heard under supplemental jurisdiction, the district court concluded that federal common law applied based on analogy to cases heard under diversity jurisdiction and persuasive authority from other circuits. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *cf. Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019).

Under federal common law, California preclusion law applies to Nix's state-law claims. *Cf. Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir.), *cert. denied*, 143 S. Ct. 102 (2022). The district court nevertheless noted that federal and California preclusion law do not differ in any significant way. *See Smith v. Bayer Corp.*, 564 U.S. 299, 307 n.6 (2011). It therefore used the articulation of the federal standard for convenience. Nix does not challenge any of the district court's reasoning or its ultimate—and correct—

No. 22-20364

of the test.

The Fifth Circuit uses a transactional test to determine whether two lawsuits involve the same claim or cause of action. *Test Masters Educ. Servs.*, 428 F.3d at 571. Under that test, "a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id.* (quoting *Petro-Hunt*, 365 F.3d at 395–96). In other words, we must determine whether the claims or causes of action "arise from the same nucleus of operative facts." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).

Nix's claims here arise from the same nucleus of operative facts as the claims in his California lawsuit. Nix dismissed with prejudice his California case against both organizations.[8] It thus has preclusive effect. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993). Nix's allegations in both cases have centered on the continued effort by MLB and the MLBPA to enforce the ban on IGF-1 selectively against him. That alleged conspiracy forms the basis of Nix's civil RICO, fraud, unjust enrichment, and mental anguish claims. Res judicata does not allow Nix to repackage claims founded on the same facts as new legal theories. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016).

Nix's attempt to avoid claim preclusion by referring to new facts fails. Most of the facts are irrelevant to his claims against MLB and the MLBPA.[9]

---

conclusion that the choice of preclusion law does not affect the outcome.

[8] *See* Plaintiffs [sic] Voluntary Dismissal of Entire Action, with Prejudice, Against All Parties, *DNA Sports Performance Lab, Inc. v. MLB*, No. 3:20-CV-546-WHA (N.D. Cal. Aug. 4, 2020).

[9] For example, his opening brief notes that he discovered the allegedly defamatory statement by the AP's Howie Rumberg in 2021. But Nix is not suing MLB or MLBPA for

Two categories of facts, however, are relevant. The first category forms the basis of Nix's claims of tortious interference against MLB and the MLBPA. But the district court specifically found that Nix's tortious-interference claims were not barred by res judicata.

The second category relates to the MLB's sponsorship agreement with Blue-Emu, which Nix alleges covers products that contain IGF-1. He also tacks Blue-Emu onto the list of Nutritional Defendants in his descriptions of his civil RICO, fraud, unjust enrichment, and mental anguish claims.

The timeline of the sponsorship agreement, however, dooms Nix's argument. MLB announced the agreement in February 2020. It was therefore announced after Nix filed his California complaint (January 2020) but before he dismissed the suit with prejudice (August 2020). Nix dismissed his California suit with prejudice and offered no reason why he was procedurally unable to amend his complaint to include allegations related to Blue-Emu.[10] Moreover, the district court correctly found that those allegations arose out of the same nucleus of operative facts. [11]

Finally, Nix's briefs limply aver that "fraud vitiates everything," including, apparently, claim preclusion. According to Nix, because the defen-

---

defamation, and the district court held that res judicata applied only to claims against MLB and the MLBPA. Similarly, Nix proffers test results that post-date his California lawsuit. But new evidence that relates to the operative facts in a complaint does not defeat res judicata if the plaintiff had the opportunity to effectively litigate the underlying matter in the first instance. *See Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir. 1990).

[10] Nix was given leave to amend but dismissed his lawsuit instead. *See* Order Re Motion for Sanctions at 10, *DNA Sports*, No. 3:20-CV-00546-WHA (N.D. Cal. Aug. 1, 2020).

[11] Even if claim preclusion did not bar Nix's claims related to Blue-Emu, the district court specifically found, in the alternative, that all of Nix's claims failed to meet the requirements of Rule 12(b)(6).

No. 22-20364

dants allegedly made fraudulent representations to the California court, his Texas claims are not precluded. Nix cites no authority for that proposition, nor does he explain why recourse does not lie in the court upon which the fraud was allegedly perpetrated. His argument is meritless.

In summary, the district court correctly concluded that Nix's claims against MLB and the MLBPA—except for his tortious interference claim—were barred by res judicata.[12]

## B.

Nix challenges the dismissal of his fraud and civil RICO claims against all defendants for failure to state a claim.[13] Again, his contentions have no merit.

First, fraud. Under Texas law, which the parties agree applies, Nix must allege that

> (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth["];[] (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.[14]

---

[12] The district court also found that Nix's vicarious liability claim against Zackary Britton was precluded. Nix does not challenge that finding on appeal.

[13] He does not challenge the dismissal of his unjust-enrichment and mental-anguish claims and therefore has forfeited those arguments. *United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017). Likewise for his aiding-and-abetting claims against numerous Media Defendants, Nutritional Defendants, Maxey, and Britton, and his vicarious-liability claims against Gatorade and NSF.

[14] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Although whether reliance is justifiable is usually a question of fact, that question is also sometimes a matter of law. *JPMorgan Chase Bank*, 546 S.W.3d at 654 (collecting Texas cases).

Nix challenges only the finding of no actual reliance. He claims that, although he continued to produce and sell a natural supplement containing IGF-1, he altered his diet around 2018 to "remove IGF-1-based animal products" and "got very sick."

Even taking that allegation as true, Nix has still failed to plead actual reliance. The complaint avers that he "personally sells and consumes" the very "natural animal substances" that he claims MLB and the MLBPA purported to ban. Elsewhere, he states that an AP employee said, in an email dated January 9, 2018, that MLB had confirmed that the ban on IGF-1 applies to both natural and synthetic versions. The complaint goes on to say that "Nix . . . knew immediately that MLB was simply lying to the AP and media in general." The media outlets, moreover, "refused to correct" the articles upon Nix's request, even after he sent them medical reports showing that "milk and meat also contain the same amount of natural IGF-1 as deer." Nix cannot plead actual reliance on a claim that he alleges he knew at the time of his purported reliance was false.

Moreover, even if Nix's reliance had been actual, it would have been unjustifiable as a matter of law. The complaint does not dispute that the drug program applied to professional baseball players. Nix was not a professional baseball player when he changed his diet. Nor does he claim anywhere that he intended to become an MLB player at any point during the existence of the purportedly phony rule. Nix could not justifiably rely on a ban that, at the time, did not apply to him and would not ever apply to him—especially because, even if the ban could conceivably have applied to him in the future, he alleges that "[n]o baseball player or related employee . . . has ever been

suspended" for using IGF-1.

On to the civil RICO claims. A successful civil RICO claim alleges "(1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise."[15] A "pattern of racketeering activity" requires "at least two" such acts. 18 U.S.C. § 1961(5). As relevant here, "a RICO plaintiff alleging predicate acts of fraud (as Plaintiffs do here) must plead the circumstances of that fraud with particularity," consistent with Rule 9(b).[16]

Nix's civil RICO claims fail because he has not adequately pleaded two or more acts that constitute "racketeering activity" under 18 U.S.C. § 1961(1): He brings only a claim of common-law fraud, which is not a predicate act, against all defendants. *See Tel-Phonic Servs., Inc.*, 975 F.2d at 1139.

In his opening brief, for the first time, Nix invites us to cobble together scattered paragraphs from his 100-page complaint and organize them into causes of action for "at least 41 counts of unlawful predicate acts that the Defendants engaged in," including "wire fraud, mail fraud, extortion, theft, computer hacking, obstruction of justice, and witness tampering." We decline to swing at Nix's less-than-tempting offering. The complaint states that "fraud is the underlying cause of action under Civil RICO." We take that statement at face value. Accordingly, the district court did not err in dismiss-

---

[15] *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc) (quoting *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997)); *see also* 18 U.S.C. § 1962(a)–(b). The statute provides for civil remedies in 18 U.S.C. § 1964(c).

[16] *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 n.2 (5th Cir. 2020) (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)).

ing Nix's civil RICO claim.

## C.

Nix brings a defamation claim against the AP and its employee Rumberg for referring to Nix as a "PED producer" in an email to the MLB Commissioner's Office[17] in September 2018. The parties disagree about whether New York or Texas law applies to the defamation claim; the district court determined that New York law does. The answer is dispositive because Nix's defamation claim would be time-barred under New York law. "We review *de novo* a district court's choice of law determination." *Cates v. Creamer*, 431 F.3d 456, 462 (5th Cir. 2005).

We affirm that the district court correctly applied New York law and dismissed the defamation claim as time-barred.[18] "To determine the applicable law, a federal court sitting in diversity applies the choice of law rules of the forum," which is Texas.[19] In the tort context, Texas uses the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *See Hughes Wood Prod., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). That test requires courts to consider a variety of facts, including (i) where the injury occurred; (ii) where the tortious conduct occurred; (iii) where the parties reside, are domiciled, are incorporated, and conduct business; and (iv) where the relationship between the parties is centered. RESTATEMENT

---

[17] Elsewhere in the complaint, Nix alleges that the email was sent to the MLB's head of public relations.

[18] Like claim preclusion, the statute of limitations is an affirmative defense. *See* FED. R. CIV. P. 8(c)(1). But because all of the elements of the defense are patent in the complaint, the district court was permitted to consider them in ruling on the motion to dismiss. *See supra* note 5.

[19] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.) (citing *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000)), *modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).

No. 22-20364

(SECOND) OF CONFLICT OF LAWS § 145 (AM. L. INST. 1971); *see also id.* § 6 (general choice-of-law factors).

As the district court recognized, the factors weigh heavily toward applying New York law. The alleged tort occurred in New York, where Rumberg resides and the AP is headquartered. The subject of the statement was Nix's New York lawsuit. The only connection to Texas is Nix's allegation that he was residing in Texas at the time. Such an allegation—even if true—does not outweigh all the other factors favoring applying New York law. Moreover, Nix pleads reputational harm and an inability to get hired by any "Major League Club or baseball entity," a generalized injury that spans the entire country and does not connect to Texas specifically.

Under New York law, Nix's claim is time-barred because defamation actions must be brought within one year of the defamatory utterance.[20] There is no discovery rule under New York law. *See Teneriello*, 641 N.Y.S.2d at 483. The complaint alleges that the email was sent in September 2018, but Nix filed his complaint in December 2021. The defamation claim comes several years too late.[21]

---

[20] N.Y. C.P.L.R. 215(3) (CONSOL. 2019); *see also Wilson v. Erra*, 942 N.Y.S.2d 127, 129 (N.Y. App. Div. 2d Dep't 2012) (first citing *Gigante v. Arbucci*, 823 N.Y.S.2d 539, 540 (N.Y. App. Div. 2d Dep't 2006); and then citing *Teneriello v. Travelers Cos.*, 641 N.Y.S.2d 482, 483 (N.Y. App. Div. 2d Dep't 1996)).

[21] The district court found, in the alternative, that Nix did not state a defamation claim. We agree. Nix raises two objections, neither meritorious.

First, he claims that the district court "erred in assuming Rumberg's email was fully in relation to statements related to a lawsuit." Insofar as Nix's defamation claim is concerned, the email was fully in relation to a lawsuit: "Not sure you even remember helping me with *a few things on a defamation case . . . .*" (emphasis added). That lawsuit provides the relevant context for interpreting the allegedly defamatory term "PED producer." Whether it alleges some conspiracy between MLB and the AP is irrelevant to Nix's defamation claim.

D.

Nix also brings a Lanham Act claim against various Nutritional Defendants and numerous MLB Clubs. The district court properly dismissed it.

The Lanham Act prohibits false or misleading descriptions in commercial advertising and creates civil liability for violations. *See* 15 U.S.C. § 1125(a)(1)(B) (section 43(a) of the Lanham Act). But at the threshold, the complaint fails to demonstrate that Nix has standing, and the district court lacked subject-matter jurisdiction over the claim. In order plausibly to establish standing, the complaint needed to allege facts to support a plausible inference "(i) that [Nix] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Trans-Union LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Nix does not plead a concrete injury, let alone one plausibly caused by the conduct of the defendants of his Lanham Act claim. The closest the complaint comes to alleging any injury at all is in his conclusory allegations that the defendants satisfied the elements of a Lanham Act claim. In particular, he states that he "has been *or likely to be* [sic] injured as a result of the false statement, *either* by direct diversion of sales from itself [sic] to defendant *or* by a lessening of the goodwill associated with its products." (emphases

---

Second, Nix contends that the district court's interpretation of the term "PED producer" in context fails because it would mean that MLB, MLB Clubs, the MLBPA, and all of their members would all be PED (or drug) distributors, promoters, or consumers. That turns the district court's analysis on its head. Allegedly defamatory statements "must be construed in the context of the entire statement or publication" in which they are made. *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985). That is exactly what the district court did. Nix takes the opposite approach by averring that the district court's construction of "PED producer" in the context of a litigation-related email must also extend to the entire universe of baseball organizations and their members and employees in every context.

added).  The 100-page meandering complaint shows none of this.

The only other injury that could conceivably implicate the defendants on the Lanham Act claim is Nix's 2018 change in diet.  Even under the highly generous assumption that that injury is sufficiently concrete for purposes of constitutional standing, it is not plausible that the relevant defendants caused it.  *First*, the change in diet allegedly occurred because of the "MLB Rules and Regulations," not any advertisements.  *Second*, Nix does not allege that he purchased and consumed any products—or forewent purchasing them— specifically because of any advertising or representations.  The complaint refers only to "IGF-1 based animal products," a class that the complaint does not allege contains any of the falsely advertised products at all, let alone specific ones.  We therefore affirm the dismissal of the Lanham Act claim for want of subject-matter jurisdiction.[22]

### E.

Nix appeals the dismissal of his tortious-interference claims against MLB and the MLBPA.  Nix alleges that MLB "threatened" his attorney Paul Golden in an email.[23]  Nix also avers that the MLBPA and its agents threatened Nix personally by demanding that he stop speaking with them, informing them of the alleged ban on IGF-1 products, or going to "any places where" they gathered.  These "threats" apparently interfered with his ability to enter business relationships with other baseball agents or secure clients

---

[22] Even if the complaint did plausibly demonstrate standing, dismissal was appropriate under Rule 12(b)(6).  As the district court explained, Nix's complaint fails to allege facts related to the second, third, and fifth elements of a Lanham Act claim.  Analysis of the fifth element largely tracks the injury analysis in the standing context.

[23] In relevant part, the email stated, "Should any other harassing litigation be filed we will also ask the [c]ourt to hold you and your clients accountable to the fullest extent under the law."

"who could have used his expertise in baseball, nutrition, fitness, or sports science."

Like all his other claims, his tortious-interference claim was properly dismissed. Texas law distinguishes between tortious interference with existing contractual relations (i.e., an ongoing business relationship) and tortious interference with business relations (i.e., a prospective business relationship).[24]

The elements of tortious interference with existing contractual relations are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential*, 29 S.W.3d at 77. The "act of interference" element generally requires demonstration that the defendant "knowingly induced one of the contracting parties to breach its obligations under a contract." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

By contrast, a plaintiff bringing a claim of tortious interference with business relations must allege that

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or

---

[24] *Compare Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (tortious interference with existing contractual relations), *with Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (tortious interference with prospective business relations).

loss as a result.

*Coinmach*, 417 S.W.3d at 923 (deriving the elements from collected cases). Independently tortious conduct is "conduct [that] would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.*

We first address Nix's allegations regarding his relationship with his attorney, Paul Golden. We then turn to his prospective business relationships with members of the baseball community.

1.

The complaint is ambiguous as to whether Nix's relationship with Golden was ongoing or prospective at the time of the alleged interference.[25] Under either characterization, his claim fails.

Even generously construing Nix's relationship with Golden as an ongoing business relationship, Nix fails to show a relevant contract existed. If anything, he alleges that no relevant contract ever existed because Golden had not yet agreed to represent Nix in his California appeal. Even if the complaint did contain allegations of a contract, Nix does not allege any breach by himself or Golden. He therefore fails to state a claim for tortious interference with existing contractual relations.[26]

---

[25] For example, Nix states that he "had a business relationship" with Golden during the relevant time but elsewhere says that the alleged threat "happened before Golden was signed up to even take on" his California appeal.

[26] The district court incorrectly stated that independently tortious conduct is required for a claim of tortious interference with existing contractual relations and dismissed Nix's claim related to Golden on that ground. But we may affirm on any basis that is supported by the record. *Stratta v. Roe*, 961 F.3d 340, 364 n.16 (5th Cir. 2020) (citing

No. 22-20364

On the other hand, if Nix's relationship with Golden was merely prospective, his claim fails because Nix does not allege any independently tortious conduct. Telling a lawyer that you will pursue legal remedies against him and his clients if he continues to pursue "harassing litigation" is not tortious conduct, as the district court noted. And Nix's argument on appeal—that he adequately alleged sufficient interference "with his current and prospective relationship" with Golden—is entirely circular. Dismissal was appropriate.

2.

Nix has also failed to state a claim of tortious interference with business relations with baseball agents and players. His complaint alleges no independently tortious conduct. Instead, he merely states that MLBPA's agent "demanded" that Nix stop speaking with baseball agents and "threatened" Nix not to go to "any places where MLBPA members gather." But "persuasion of others not to deal with the plaintiff," if "lawful," is not independently tortious. *Wal-Mart*, 52 S.W.3d at 726. And Nix does not allege that MLBPA's conduct—even if "sharp" or "unfair"—was unlawful. *Id.*

The court properly dismissed the claim.

IV.

Nix appeals the dismissal of his claims with prejudice, reasoning that he should have been given leave to amend. We disagree and conclude that the district court did not abuse its discretion.

A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Movants must "give the court at least some notice" of what the amendments would be and how those amendments would "cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th

---

*Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995)).

1204, 1209 (5th Cir. 2021) (per curiam), *as revised* (Nov. 26, 2021). Thus, a court may deny leave where "the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured." *Id.* (citing *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002)). Denial is also justified in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).

Denial of leave to amend was appropriate because leave would have been futile. Amendments are futile where the proposed amendment fails to state a claim, and courts review them under the "same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). Nix's conclusory statement that he could adequately amend his complaint is devoid of any factual specificity. It does not identify any particular defendant or any specific unlawful act. To the contrary, it refers vaguely to thirty-five "unlawful acts associated with RICO."

More fundamentally, Nix does not explain how any amendment could address the deficiency that infects all of his claims. His entire legal argument rests on the premise that because IGF-1 is banned, anything containing any amount of IGF-1 is also banned. The only justification Nix provides for that claim is the lack of a specific IGF-1 quantity threshold in the Joint Agreement. But Nix's complaint fails to allege that MLB or MLBPA views the ban as covering anything other than exogenous levels of IGF-1 that detectably alter the body's natural IGF-1 production or that they implement that interpretation

selectively.[27]

Instead, in his opening brief on appeal, Nix includes an extended diatribe against the defendants and proclaims that MLB "should no longer allow non-vegans to play."

To the extent that Nix requested leave to amend, it was futile, and the district court did not abuse its discretion in denying the request.

## V.

Finally, the issue of sanctions. Nix appeals the imposition of injunctive sanctions. Independently, the defendants move for monetary and injunctive sanctions from this court. We conclude that the district court did not abuse its discretion in imposing sanctions and that additional sanctions are warranted.

## A.

The district court properly sanctioned Nix. Specifically, the court prohibited Nix from filing any suit against MLB (including its defendant employees and MLB Clubs) or the MLBPA (including its defendant employees) without advance permission from the Chief Judge of the Southern District of Texas or the delegee thereof. It also required Nix "to file a copy of [the district court] opinion with any filing that he makes in any other court" against those same defendants.[28]

---

[27] A contrary interpretation is especially tortured because the complaint concedes that every human needs IGF-1 to survive. Nix asks us to interpret the Joint Drug Agreement in a manner that he acknowledges would mean "humans could not legally play baseball." Such a construction is utterly implausible. It is also immaterial: The district court did not dispose of any of Nix's claims on the basis that IGF-1 was actually banned by the Joint Drug Agreement.

[28] The court did not apply its injunctive relief to the Nutritional or Media Defen-

No. 22-20364

"A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum*, 513 F.3d at 187. In determining whether a pre-filing injunction is warranted to deter future vexatious filings, courts consider a variety of factual circumstances, including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)). Such injunctions must be tailored to protect the courts and innocent parties while also protecting the right of the enjoined party to file non-frivolous lawsuits. *See Farguson v. MBank Hous., N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). *Pro se* status is no aegis. *Id.* at 359.

Nix does not identify any abuse in the court's discretion or error in its reasoning; he merely reiterates that he is right, and the defendants are wrong, on the merits of his claims. The district court engaged in a lengthy analysis of the four *Baum* factors and considered Nix's lengthy history of frivolous lawsuits and resulting sanctions, harassing conduct during the course of the instant lawsuit, harassing conduct targeting certain defendants before filing the instant lawsuit, the undue burden of his suit on the judicial system, and the inadequate deterrent effect of monetary sanctions imposed on Nix by courts outside this circuit.

The district court acted firmly within its discretion.

---

dants because they did not seek such relief.

B.

The defendants seek both monetary sanctions and injunctive relief from this court. We address each type in turn and conclude that both are appropriate.

1.

Federal Rule of Appellate Procedure 38(a) allows courts of appeals to award "just damages and single or double costs to the appellee" upon a finding that an appeal is frivolous. Appeals are frivolous where "the result is obvious or the arguments of error are wholly without merit." *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir. 1988) (per curiam) (citing *Atwood v. Union Carbide Corp.*, 847 F.2d 278, 280 (5th Cir. 1988)). Frivolousness need not be intentional; even inadvertently frivolous appeals are subject to Rule 38 sanctions. *See Sun Coast Res., Inc. v. Conrad*, 958 F.3d 396, 398 (5th Cir. 2020).

Nix's appeal is entirely frivolous. The district court assessed his claims in a thorough forty-eight-page opinion. On appeal, Nix does not raise a single colorable argument or explain any specific error. For example, he repeatedly alleges that the district court failed to take his pleaded facts as true, but he fails to identify a specific example in the district court opinion. He contends that his claims against MLB and the MLBPA are not precluded by the resolution of his California lawsuit, using the exact reasoning that the district court considered, dissected, and rejected; Nix does not point to any specific error. His averments about his other claims are equally devoid of merit.

Aggravating the situation is Nix's patent bad faith. *See Coghlan*, 852 F.2d at 814 (collecting cases). Nix was not only on notice from the district court that he was a vexatious litigant and that his lawsuit was frivolous, but he was also on notice from two other courts that have imposed sanctions on him (a California federal court and a New York state court) that his claims

No. 22-20364

have no merit. His briefing on appeal repeatedly accuses the defendants of lying to the courts and the public, violating the dictionary definition of "integrity" and improperly failing to ban the entire human race from playing professional baseball, further evincing the bad-faith nature of his litigation. Although Nix may believe that defendants' and the judicial system's time and energy have as much worth as a "piece of metal" and are unworthy of respect, we disagree.

This court therefore imposes monetary sanctions in the form of reasonable attorney's fees and double costs for the appeal, per Rule 38.

2.

Injunctive relief is likewise warranted. Circuit courts have the authority to sanction parties through injunctions, per both inherent and statutory authority. *See Farguson*, 808 F.2d at 360 (describing inherent authority); 28 U.S.C. § 1651 (conferring statutory authority). Because the defendants seek a pre-filing injunction, we consider the same *Baum* factors that the district court did in imposing its own pre-filing injunction. *See supra* Part V.A.

We have little to add to the district court's analysis of the vexatious nature of Nix's conduct and litigation. His briefing on appeal only confirms the need for a broad pre-filing injunction, given that it demonstrates his commitment to continuing his moral crusade against the defendants.[29] It also confirms that Nix's conception of the conspiracy has expanded and is unlikely to shrink.

---

[29] For example: "Despite court orders . . . holding that IGF-1 is banned as a matter of law, Appellees continue to engage [in their selective enforcement of IGF-1]. Appellees need to be reminded that while Baseball is a game, litigation is not. It is the time-honored method of seeking the truth, finding the truth, and doing justice." We find it unlikely that Nix will view the total dismissal of his claims as shedding sufficient light on the defendants' alleged misdeeds.

Nix has filed nine lawsuits in four different states. Three courts have imposed sanctions. We become the fourth and end Nix's onslaught of vexatious and frivolous litigation in this circuit. Nix is enjoined from filing any lawsuit or pleading against any of these defendants in any court within the jurisdiction of the Fifth Circuit without first obtaining the permission of the court in which he seeks to file. He must also attach a copy of this opinion to any such request for permission.

## VI.

We AFFIRM the district court's dismissal of Nix's claims, denial of leave to amend, and imposition of sanctions. We GRANT the defendant's motion for sanctions.

It is therefore ORDERED that no pleading or lawsuit in any federal court within the jurisdiction of the Fifth Circuit shall be filed by, or on behalf of, Neiman Nix, his affiliates, or his related entities against any of the defendants in this suit without first obtaining the permission of the court in which he seeks to file. He must attach a copy of this opinion to any such request for permission.

We REMAND to determine the amount of the monetary sanctions, which comprise the attorney's fees and double costs incurred in this appeal. The defendants are ORDERED to submit evidence of those fees to the district court within thirty days.